NICHOLS ASSOCIATES, INC. *vs.* S. LEGER STARR.

Hampden.    January 12, 1976. — February 19, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Jurisdiction,* Nonresident, Under long arm statute.

A plaintiff confronted with a motion under Rule 12(b)(2) of the Massachusetts Rules of Civil Procedure had the burden of establishing the facts upon which the question of personal jurisdiction over the defendant was to be determined. [93-96]

On the record of the pleadings and the defendant's affidavit in support of his motion to dismiss a civil action, the defendant was not "transacting any business" in Massachusetts within the meaning of G. L. c. 223A, § 3 (*a*). [96-97]

CIVIL ACTION commenced in the Superior Court on July 30, 1974.

A motion to dismiss was heard by *Griffin, J.*

The case was submitted on briefs.

*Louis Kerlinsky* for the plaintiff.

*John T. Morin & Robert A. Gelinas* for the defendant.

GRANT, J. This is an action brought in the Superior Court in Hampden County by which the plaintiff seeks to recover the value of surveying and related services allegedly rendered by it to the defendant. The complaint is on an account annexed which is in substantial conformity with Form 4 of the Appendix of Forms referred to in Mass. R.Civ.P. 84, 365 Mass. 843 (1974). Neither the com-

plaint nor the summons issued thereon contains any indication of the residence or of any place of business of either of the parties. It appears from the original papers that service on the defendant was made by a Connecticut deputy sheriff's leaving the summons and a copy of the complaint at the defendant's usual abode in Enfield, Connecticut. See Mass. R.Civ.P. 4 (e), 365 Mass. 736 (1974); G. L. c. 223A, §§ 4 and 6. The defendant seasonably filed in the Superior Court a motion under Mass. R.Civ.P. 12 (b) (2), 365 Mass. 755 (1974), to dismiss the action by reason of the court's lack of jurisdiction over his person. The motion was supported by an affidavit of the defendant, to which were attached (as exhibits) what the defendant represented to be copies of six invoices which he had received from the plaintiff. The plaintiff filed no counter affidavit or other form of opposition, and the motion appears to have been heard and determined solely on the complaint, the motion and the defendant's affidavit and its attached exhibits. The motion was allowed, and the plaintiff has appealed from the ensuing judgment which dismissed the action.

The parties appear to be in agreement that the only basis on which the Superior Court could have asserted personal jurisdiction over the defendant is to be found in the provisions of G. L. c. 223A, § 3 (*a*) (the long arm statute), as amended by St. 1969, c. 623, which provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (*a*) transacting any business in this commonwealth...." In *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.* 361 Mass. 441 (1972), the Supreme Judicial Court "[saw] the function of the long arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States" (p. 443), discussed certain cases which tend to delineate the relevant constitutional limits, but held that the facts of the particular case did not authorize the Superior Court to exercise jurisdiction over the defendant under the above quoted provisions of § 3 (*a*).

In the present case the facts material to the question of personal jurisdiction are confined to those which appear in the defendant's affidavit and the exhibits attached thereto. The plaintiff has offered nothing to control, limit or contradict any of the factual assertions of that affidavit,[1] whether by counter affidavit, answers to interrogatories or deposition. We are thus faced with the threshold question of how far (if at all) we should go in drawing inferences from the only facts offered which might tend to support a conclusion that personal jurisdiction exists in this case. That question is one of first impression so far as Mass. R.Civ.P. 12 (b) (2) is concerned. Accordingly, we turn to the cases decided under Fed. R.Civ.P. 12 (b) (2), from which our rule was taken (with variations not here material). See *Giacobbe* v. *First Coolidge Corp.* 367 Mass. 309, 317 (1975); *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 553-555 (1976); *Shapiro Equipment Corp.* v. *Morris & Son Construction Corp.* 369 Mass. 968 (1976). Compare *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.* 367 Mass. 464, 468 (1975).

A study of the Federal cases shows them to hold, almost without exception, that a plaintiff confronted with a Rule 12 (b) (2) motion has the burden of establishing the facts upon which the question of personal jurisdiction over a defendant is to be determined. See, e.g., *O'Hare Intl. Bank* v. *Hampton,* 437 F. 2d 1173, 1176 (7th Cir. 1971); *Mosley* v. *Nationwide Purchasing Inc.* 485 F. 2d 418, 420 (Temp. Emerg. Ct. App. 1973); *Product Promotions, Inc.* v. *Cousteau,* 495 F. 2d 483, 490 (5th Cir. 1974); *Rivera* v. *Pocahontas S.S. Co.* 340 F. Supp. 1307, 1309, 1310 (D. Mass. 1971); *Socialist Workers Party* v. *Attorney Gen.* 375 F. Supp. 318, 322, 325-326 (S.D.N.Y. 1974); 5 Wright & Miller, Federal Practice and Procedure, § 1351, at 565 (1969).[2]

---

[1] We ignore all the argumentative and conclusional assertions of the affidavit.

[2] As to the Federal practice prior to 1936, see *McNutt* v. *General Motors Acceptance Corp.* 298 U. S. 178, 188-189 (1936). As to the Massachusetts practice prior to July 1, 1974, see *Remington Arms Co., Inc.* v. *Lechmere Tire & Sales Co.* 339 Mass. 131, 133 (1959).

Contra, *Impex Metals Corp.* v. *Orement Chemical Corp.*
333 F. Supp. 771, 774 (S.D.N.Y. 1971). The authorities
cited (with the one exception noted) lead us to the conclu-
sion that we would be misplacing the burden of proof in this
case if we were to draw any unnecessary inferences in
favor of the plaintiff from the facts which are set out in the
defendant's affidavit or which appear from the exhibits
attached thereto. Accord, *Community Natl. Bank* v.
*Dawes*, 369 Mass. 550, 558-559 (1976) (on a motion for
summary judgment under Mass. R.Civ.P. 56, where oppo-
nent of motion "did not expose the trial judge" to "specific
facts relating to the transaction in issue to bolster" his
case, trial judge was correct in refusing to draw "contradic-
tory inferences" "from the undisputed facts of the case"
supplied by the moving party in its affidavit); *Shapiro
Equipment Corp.* v. *Morris & Son Construction Corp.* 369
Mass. 968, 969 (1976) (same).

With that basic principle in mind we may now proceed
to an examination of the undisputed factual assertions of
the defendant's affidavit and to the matters disclosed in
the exhibits attached thereto. The defendant is a resident
of Connecticut and a land developer who "had dealt with
plaintiff, a surveying and engineering firm, prior to the
time of the events in suit . . .. In late 1968 or early 1969, I
purchased land in Ellington, Connecticut with the inten-
tion of developing it. In or about January, 1969, while I
was on another development site in Enfield, Connecticut,
Albert E. Nichols[3] approached me and inquired about
property I owned in Ellington and whether I would re-
quire a survey to precede its development. . . . While at the
Enfield site, Mr. Nichols and I discussed the Ellington
project, made . . . arrangements for his firm to perform cer-
tain surveying work and agreed upon a price schedule. We
did not at that . . . or . . . any other time, draft or sign a
written contract or any other agreement specifying the

---

[3] The defendant's brief refers to Nichols as the president of the
plaintiff.

parameters of plaintiff's duties or my obligations with respect to payment.... Plaintiff's services in the instant matter consisted, primarily, of sending surveying crews to the Ellington ... property, doing the necessary field work there and preparing the maps and other necessary documents at the firm's offices in Holyoke, Massachusetts.... Based upon the invoices sent me, copies of which are ... annexed ... at least half of the plaintiff's work, and all the vital 'field work,' was performed in Ellington.... [A]t no time during our course of dealings did I travel to plaintiff's offices in Massachusetts.... [W]hatever instructions ... had to be communicated to plaintiff were given in Connecticut or by telephone. On the rare occasions when the Ellington project required the immediate delivery of a map or some of the other documents that plaintiff was preparing and plaintiff did not have a messenger available, ... [I sent] an employee to pick up whatever was needed from plaintiff."

Copies of six invoices from the plaintiff to the defendant which are attached to the motion (two of which bear a letterhead indicating that the plaintiff has an office in Holyoke) give us fair indications of the different types of services performed by the plaintiff in Connecticut and in Holyoke during the period from February 3, 1969, through October 22, 1970. Speaking generally, the services performed in Connecticut appear to have included the survey and other field work necessary to the preparation of profiles and plot, lot, drainage and topographical plans, the securing of necessary copies of deeds, an on-site conference with a water supply expert, and attendance at various planning and zoning board meetings. The services performed in Holyoke appear to have included engineering computations and the drafting and reproduction of various plans, blue prints and sepias. The invoices disclose four separate mailings and one delivery by the plaintiff from Holyoke to Connecticut. It is possible to infer one pickup in Holyoke, but nothing to indicate whether the pickup was made by a representative of the defendant. It appears that the defendant has made one payment to the plaintiff

on account, but how or where that payment was made is matter of conjecture.[4]

Based on the foregoing, only two things emerge which might be regarded as contacts which the defendant had with Massachusetts which could have caused any "impact upon [its] commerce." *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.* 361 Mass. at 446. The first and most obvious contact was the portion of the work performed by the plaintiff at its office in Holyoke. The difficulty here is that it is not a necessary inference from anything found in the defendant's affidavit that it was even within the contemplation of the parties that the plaintiff would perform any portion of the agreed work in Massachusetts rather than in Connecticut or some other State.[5] For all that appears, this particular contact was limited to the defendant's acceptance of services which the plaintiff simply chose to perform in Massachusetts. Compare *Orton* v. *Woods Oil & Gas Co.* 249 F. 2d 198, 202-203 (7th Cir. 1957). Contrast *Ziegler* v. *Hodges,* 80 Ill. App. 2d 210, 217 (1967); *Corporate Development Specialists, Inc.* v. *Warren-Teed Pharmaceuticals, Inc.* 102 N. J. Super 143, 146-147, 155 (1968). And see *Whittaker Corp.* v. *United Aircraft Corp.* 482 F. 2d 1079, 1084-1085 (1st Cir. 1973). We do not see any significant involvement by the defendant in the commerce of Massachusetts.

The only other contact which the defendant had with Massachusetts consisted of the "rare occasions" when he sent an employee to Holyoke to pick up plans required by the Connecticut project "when the . . . plaintiff did not have a messenger available." All plans were obviously in-

---

[4] Contrary to the assertion in the plaintiff's brief, there is nothing in the record to suggest that the defendant ever mailed anything to the plaintiff. We do not know who initiated such telephone conversations as may have occurred between the parties, or whether any instructions which the defendant may have given during any such conversations related to the work in Connecticut or to the work in Holyoke.

[5] We know nothing of the prior dealings between the parties or of the location of any place of business which the plaintiff may have had at the time of those dealings or of the present dealings.

tended for use in Connecticut. We infer from the portion of the defendant's affidavit just quoted and from the portions of the invoices which show repeated mailings of plans by the plaintiff from Holyoke to Connecticut that the plaintiff was under a contractual duty to deliver all plans to Connecticut. In the circumstances it cannot be said that the defendant, by occasionally taking delivery of plans in Holyoke, "purposefully . . . [availed himself] of the privilege of conducting activities within the forum State." *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.* 361 Mass. at 446, quoting from *Hanson* v. *Denckla,* 357 U. S. 235, 253 (1958).

We hold that on this record the defendant was not "transacting any business" in Massachusetts within the meaning of G. L. c. 223A, § 3 (*a*).

*Judgment affirmed.*