Irving A. BACKMAN

v.

Albert J. SCHIFF, Albert J. Schiff Associates, Inc., Reed, Roberts Associates, Inc. and Frank S. Treco, Jr.

Civ. A. No. 77–3868–Z.

United States District Court, D. Massachusetts.

Oct. 31, 1979.

Brian A. O'Connell, Gaston Snow & Ely Bartlett, Daniel B. Bickford, Boston, Mass., for plaintiff.

Daniel J. Gleason, Nutter, McClennen & Fish, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff brings this action for damages and an accounting alleging that defendants

are guilty of breach of an express and implied contract, tortious conduct and violations of the Deceptive Trade Practices Act of the State of Ohio. The matter is before me on defendants' motions to dismiss or, in the alternative, for change of venue. Albert J. Schiff (Schiff), Albert J. Schiff Associates, Inc. (Schiff Associates), and Frank S. Treco, Jr. (Treco) move to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. Schiff and Schiff Associates move to dismiss pursuant to Fed.R. Civ.P. 12(b)(5) for insufficiency of service of process. Reed, Roberts Associates, Inc. (Reed, Roberts) moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure of the plaintiff to state a claim against it. All defendants move for transfer to a more convenient forum. 28 U.S.C. § 1404(a).

Plaintiff is a resident of Massachusetts. At all relevant times Schiff was a resident of New York, and Schiff Associates had its principal place of business there. Treco is a resident of Ohio.

*Motions Under Rule 12(b)(2).*

▇ Defendants Schiff, Schiff Associates and Treco assert that their contacts with Massachusetts in connection with plaintiff's business are so insignificant as to prohibit the court's exercise of personal jurisdiction over them in accordance with the Massachusetts long-arm statute, Mass.Gen.Laws ch. 223A. Insofar as relevant to this case, Section 3 of the statute provides for jurisdiction if a foreign defendant transacts any business in the Commonwealth (subsection (a)), causes tortious injury by an act or omission within the Commonwealth (subsection (c)), or causes tortious injury in this Commonwealth by an act or omission outside the Commonwealth if he regularly does or solicits business or derives substantial revenue from goods or services, sold in the Commonwealth (subsection (d)). The burden of establishing facts sufficient to support long-arm jurisdiction is on the plaintiff. *Good Hope Industries, Inc. v. Ryder Scott Company*, 79 Mass.Adv.Sh. 1155, 1157, 389 N.E.2d 76; *Nichols Associates, Inc. v. Starr*, 4 Mass.App. 91, 93, 341 N.E.2d 909, 910–11 (1976). Since Section 3 requires

that the facts supporting long-arm jurisdiction also give rise to the plaintiff's cause of action, e. g., *Good Hope Industries, Inc. v. Ryder Scott Company*, 79 Mass.Adv.Sh. at 1162, 389 N.E.2d 76; *Wood v. Wood*, 369 Mass. 665, 671–72, 342 N.E.2d 712, 716–17 (1975), plaintiff's burden of proof can be met only by facts which support his claim. A summary of such facts, taken from the pleadings and discovery conducted on the jurisdictional issues, follows.

Plaintiff, Schiff, and Treco are life insurance agents for the Mutual Life Insurance Co. of New York (MONY). Since January 1, 1973, Schiff Associates has been a wholly-owned subsidiary of Reed, Roberts. Prior to that time, it had been a sole proprietorship operated by Schiff and later a close corporation, of which Schiff was president, chief executive officer, and sole shareholder.

Plaintiff devised an insurance plan, named the Double Dollar plan (Double Dollar), which he claims is a unique combination of keyman life insurance and employee retirement, death, and disability benefits. He developed sales kits and other promotional materials specifically designed for marketing Double Dollar. In 1971, plaintiff invited certain other MONY agents to join MONY Associates, an affiliation of agents he had organized to market Double Dollar. By letter mailed from Massachusetts, plaintiff invited interested agents to attend a seminar in Washington, D.C. at which they could learn from plaintiff the details of the Double Dollar plan and marketing techniques. As prerequisites to attendance, plaintiff required payment of a $100 membership fee and endorsement of acceptances to the invitation which recited that each MONY Associate would keep information about Double Dollar confidential and would pay to plaintiff 50 percent of any commissions earned on Double Dollar sales. Schiff and Treco were among the invitees. They allegedly mailed the $100 association fee and executed acceptances to plaintiff in Massachusetts. Schiff attended the seminar; Treco did not.

At the seminar, plaintiff distributed Double Dollar sales kits, and the recipients of the kits, including Schiff, executed receipts which reiterated the promises to share commissions with plaintiff and to keep Double Dollar confidential. Treco received a sales kit by mail from Massachusetts and allegedly returned and executed a receipt to plaintiff.

For approximately two years, Schiff and Treco tried, without success, to sell Double Dollar in jurisdictions other than Massachusetts. Their contacts with Massachusetts were limited to directing minimal correspondence to plaintiff, on one occasion in 1971 by Schiff and on five occasions by Treco. During the period 1971–3 each mailed checks to plaintiff in Massachusetts in payment for certain computer services, totalling $540 for Schiff and $617 for Treco. Plaintiff alleges that he frequently called defendants by telephone and occasionally mailed descriptive materials about Double Dollar to both defendants. In addition, plaintiff states that he conducted MONY Associates training seminars attended by Schiff and Treco and that he occasionally arranged meetings for Schiff and Treco with prospective clients. None of the seminars or meetings took place in Massachusetts.

Sometime after 1971, Schiff developed an insurance plan and marketing scheme which plaintiff alleges are identical in all material respects to Double Dollar and plaintiff's sales plan. Schiff and Schiff Associates, with Treco's help, successfully sold this plan, called the Executive Salary Protection plan (ESP), to national and multi-national companies. All such sales were negotiated and concluded outside Massachusetts. There is an allegation that ESP sales were solicited in Massachusetts by a Schiff salesman.

On these facts, plaintiff seeks a declaration of his rights and an accounting under the MONY Associates documents executed by Schiff and Treco. (Complaint, Counts I and II). He claims a breach of contract under those documents by Schiff and Treco (Complaint, Count III) as to whom he also asserts rights on a theory of implied contract (Complaint, Count VI). Counts IV, V, VII, VIII, and IX allege various torts on the part of Schiff, Schiff Associates, and Treco. Count X is against Treco alone alleging violations of Ohio's deceptive trade practices act.

The first question is whether Schiff, Schiff Associates and Treco may be deemed to have been transacting any business in this Commonwealth within the meaning of Mass.Gen.Laws ch. 223A, § 3(a). That, in turn, depends on the extent of their participation in Massachusetts commerce. *"Automatic" Sprinkler Corp. of America v. Seneca Foods Corp.*, 361 Mass. 441, 280 N.E.2d 423, 426 (1972); *Droukas v. Divers Training Academy, Inc.*, 78 Mass.Adv.Sh. 1175, 1180–81, 376 N.E.2d 548, 551 (1978); *Good Hope Industries, Inc. v. Ryder Scott Company*, 79 Mass.Adv.Sh. at 1163–66, 389 N.E.2d 76; *Nichols Associates, Inc. v. Starr*, 4 Mass. App. at 96, 341 N.E.2d at 912. Cf. *Ross v. Ross*, 371 Mass. 439, 358 N.E.2d 437 (1976).

It is clear from the manner in which the MONY Associates venture developed that Schiff and Treco have only an attenuated and fortuitous relationship with Massachusetts. Plaintiff initiated the contacts with Schiff and Treco outside Massachusetts. The introductory seminar took place outside Massachusetts. As participating MONY agents, defendants were to seek Double Dollar accounts in their respective geographical locations.[1] Both Schiff and Treco continued to regard New York and Cleveland as their respective spheres of activity and neither expected that participation in

---

1. Plaintiff's April 29, 1971 letter of invitation states "[E]ach of you must have at least two or three public corporations in your area that this could work in." Later, plaintiff more specifically refers to cities: "If you become a MONY Associate, you will have to agree to a 50% split with me on any case generated by this idea or plan, and a 37½%, 37½%, 25% split, if an associate in a city other than your own has to be utilized to sign up Executives in branch offices, etc. Likewise, you too would have an opportunity to sign up Executives in your city, on someone elses [sic] case, for a 25% split."

plaintiff's venture would extend his field of operations to Massachusetts. MONY Associates were not required to, and Schiff and Treco did not, visit Massachusetts in connection with the Double Dollar venture. On the contrary, the clear purpose of plaintiff's marketing scheme was to use defendants to reach large employers, scattered through various jurisdictions, not to intensify sales activity in Massachusetts.

▮ Defendants' only contacts with Massachusetts—mailing to plaintiff in the state responses to seminar invitations, reimbursements for computer services and requests for descriptive brochures—do not bespeak a commercial relationship with the state.[2] Nor is the plaintiff helped by the fact that the acceptance forms were mailed to him in Massachusetts. The issue, to which that fact is addressed, of where the MONY Associates agreement, if any, was made, is not dispositive. In the words of the First Circuit (Coffin, J.), "The intricacies of offer, counteroffer, and invitation to make an offer are irrelevant to the central concern for fairness that should illuminate this area of the law." *Vencedor Manufacturing Co., Inc. v. Gougler Industries, Inc.*, 557 F.2d 886, 890 (1977). Fairness precludes requiring Schiff and Treco to defend themselves here when the success of the MONY Associates venture—broadening the

Double Dollar market—depended upon the defendants' activities in their own jurisdictions, while the defendants' minimal and sporadic contacts with Massachusetts evolved only as incidents to their out-of-state marketing efforts. *"Automatic" Sprinkler Corp. of America v. Seneca Foods Corp., supra; Nichols Associates, Inc. v. Starr, supra.*[3] Their function as MONY Associates was to implement plaintiff's marketing plan outside the Commonwealth. Cf. *Whittaker Corporation v. United Aircraft Corporation*, 482 F.2d 1079 (1st Cir. 1979) and *Marketing & Distribution Resources, Inc. v. Paccar, Inc.*, 460 F.Supp. 990 (D.Mass.1978).[4] Their relationship with plaintiff did not substantially involve defendants in, nor did their activities have a substantial impact on, the Massachusetts economy so as to subject them to jurisdiction under Section 3(a). Cf. *Good Hope Industries, Inc. v. Ryder Scott Company, supra.*[5]

▮ Plaintiff argues with respect to Schiff Associates that it established sufficient contacts with Massachusetts when one, of its salesmen discussed ESP in the course of soliciting group life insurance sales in Massachusetts. There are no allegations, however, that the salesman has a residence or maintains an office in Massachusetts, and it is established that Schiff Associates

2. Schiff, Schiff Associates, and Treco are licensed pursuant to Mass.Gen.Laws ch. 175 to sell insurance in Massachusetts. That fact is irrelevant, however, to the inquiries under ch. 223A, because plaintiff's cause of action does not arise from any licensed activity. Cf. Mass. Gen.Laws ch. 223A, § 3(f).

3. The defendant in *"Automatic" Sprinkler* had contracted to purchase machinery from the plaintiff. Finding that defendant had looked to New Jersey, Canada, and New York for negotiation of the contract, to Ohio for performance under the contract, and to Massachusetts only in connection with the documentary execution of the sale—the purchase order, letter of acceptance, invoice, and some payments had been processed by plaintiff's Massachusetts division—the court refused to assert jurisdiction. 280 N.E.2d at 425–26.

The controversy in *Nichols Associates* arose in connection with a contract for plaintiff's surveying services on defendant's land in Connecticut. The court found that all vital aspects

of plaintiff's performance under the contract had taken place in Connecticut and that Massachusetts was not necessarily the focus of any services to be rendered by the plaintiff. 4 Mass.App. at 94–96, 341 N.E.2d at 911–12.

4. In *Whittaker*, the defendant issued specifications and procedures to plaintiff, maintained regular communications, frequently sent its personnel to visit plaintiff's facility, and monitored plaintiff's performance. 482 F.2d at 1081–82, 1083–84. Similarly, the defendant in *Paccar* directed plaintiff's activities and maintained contact with plaintiff throughout the parties' negotiations and plaintiff's performance under their contract. 460 F.Supp. at 994.

5. As a result of defendant's conduct, the plaintiff in *Good Hope* breached agreements with Massachusetts contractors and vendors made in reliance on defendant's representations to plaintiff. 79 Mass.Adv.Sh. at 1160, 389 N.E.2d 76.

has no place of business here. In short, the ESP discussion is the sole contact of Schiff Associates with Massachusetts, and that activity does not constitute "transacting business" for this purpose. Solicitation may serve as an adequate premise to jurisdiction, but only if done regularly and persistently, *Nippert v. City of Richmond*, 327 U.S. 416, 426, 66 S.Ct. 586, 90 L.Ed. 760 (1946), or accompanied by significant economic benefits, *Vencedor Manufacturing Co., Inc. v. Gougler Industries, Inc., supra*, at 889, 891, or if regular solicitation is combined with commercial benefit, *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Radio Shack Corporation v. Lafayette Radio Electronics Corporation*, 182 F.Supp. 717, 718–19 (D.Mass. 1960), *Wyshak v. Anaconda Copper Mining Co.*, 328 Mass. 219, 103 N.E.2d 230, 231 (1952); *Jet Manufacturing Co., Inc. v. Sanford Ink Co.*, 330 Mass. 173, 112 N.E.2d 252, 254 (1953).[6] ESP sales were never negotiated or concluded in Massachusetts. The discussions were haphazard and generated no revenue for Schiff Associates. Accordingly, Schiff Associates cannot be held to have transacted business in Massachusetts by reason of that salesman's solicitation.

■ The second issue under the long-arm statute is whether this court has jurisdiction under subsection (c) on the basis of allegations that defendants caused tortious injury by "an act or omission in this Commonwealth." Plaintiff claims that the marketing and sale of ESP by the defendants constitutes unfair competition, a misappropriation of his exclusive proprietary interest in Double Dollar, a breach of confidential relations, and interference with his contractual relations. Marketing ESP in Massachusetts may be a tortious act in this Commonwealth under at least some of these theories and there is some evidence that a Schiff salesman did engage in such activity here. That is adequate to defeat the motion to dismiss as to Schiff and Schiff Associates. *Murphy v. Erwin-Wasey, Inc.*, 460

F.2d 661, 663 (1st Cir. 1972). Plaintiff alleges no comparable activity in Massachusetts on the part of Treco, therefore, Section 3(c) does not apply to him.

■ Under the third possible basis of jurisdiction, Section 3(d), the statute requires a showing that defendants derived substantial revenue from services rendered in the Commonwealth or that they regularly did or solicited business here. Treco's sporadic contacts with Massachusetts are inadequate to bring him them within the statute.

Accordingly, the motion to dismiss for lack of personal jurisdiction is allowed with respect to Treco. It is denied with respect to Schiff and Schiff Associates.

*Motions Under Rule 12(b)(5).*

■ In view of my ruling on the Rule 12(b)(2) motion I will address this motion only as it pertains to Schiff and Schiff Associates. Plaintiff sought to serve Schiff and Schiff Associates by certified mail and requested return receipts. The receipt addressed to Schiff Associates was returned bearing the signature of an unidentified individual. The statute, Mass.Gen.Laws ch. 223A, § 6(a), authorizes service of process "by any form of mail addressed to the person to be served and requiring a signed receipt," and § 6(b) provides that "[w]hen service is made by mail, proof of service shall include a receipt signed by the addressee or other evidence of personal delivery to the addressee satisfactory to the court." Service on a corporation must be made upon the president, treasurer, clerk, cashier, secretary, agent or other officer in charge. Mass.Gen.Laws ch. 223A, § 8 and Mass.Gen.Laws ch. 223, §§ 37, 38. Service on Schiff Associates was clearly not made in accordance with the statute. Plaintiff has filed no proof of service with respect to Schiff. The motion to dismiss for lack of proper service will, therefore, be allowed if plaintiff fails to file proof of service upon Schiff and Schiff Associates in compliance with the statute within 30 days.

---

**6.** Massachusetts has taken the view that solicitation alone is not enough and has exercised jurisdiction only on a showing of solicitation plus some additional increment of activity in the forum. See, e. g. *Wyshak v. Anaconda Copper Mining Co., supra; Jet Manufacturing Co., Inc. v. Sanford Ink Co.*

**138**

*Motion Under Rule 12(b)(6).*

■ Plaintiff alleges that Reed, Roberts has marketed and sold ESP "directly or through Schiff Associates" and that these acts constitute a misappropriation of plaintiff's property, interference with his contractual relations, and unfair competition. In support of its motion to dismiss, Reed, Roberts denies it has itself committed the acts attributed to it and argues that it is not vicariously liable for the acts of Schiff Associates. As the parties have presented affidavits in connection with this motion, I shall treat it as a motion for summary judgment. Fed.R.Civ.P. 12(b) and 56.

Schiff, a director of Reed, Roberts and Schiff Associates, denies in an affidavit filed in support of this motion that Reed, Roberts has marketed or sold ESP as alleged in the complaint and asserts that Reed, Roberts takes no part in the operation of Schiff Associates. Plaintiff has come forth with no specific facts to controvert these sworn statements. Fed.R.Civ.P. 56(e). I therefore accept the truth of Schiff's assertions. *Morton v. Browne*, 438 F.2d 1205 (1st Cir. 1971). It is clear that Reed, Roberts did not itself market or sell ESP or derivative programs. Fed.R.Civ.P. 56(d). Nor can Reed, Roberts be held on a theory of vicarious liability or agency. Schiff's affidavit establishes that Reed, Roberts and Schiff Associates operate independently and Reed, Roberts does not control Schiff Associates. Accordingly, the complaint against Reed, Roberts may be dismissed.

In summary, the complaint may be dismissed as against Treco as this court lacks personal jurisdiction over him. The complaint against Reed, Roberts may be dismissed for failure to state a claim, and the complaint against Schiff and Schiff Associates will be dismissed if plaintiff does not file proof of service within 30 days. The motion for change of venue is denied.