Dougan, J.
This is an action for an alleged breach of contract arising out of an agreementunderwhich plaintiff, IrmaS. Mann Strategic Marketing, Inc. (“ISM”) was to provide marketing services to Innovatex Research and Development, Inc. (“INNOVATEX”). ISM is seeking damages under the contract forwork performed in the amount of twenty-three thousand six hundred sixty-seven ($23,667.00) dollars. Jurisdiction is claimed and service was made on the defendant pursuant to G.L.c. 223A
The defendant, Innovatex, filed an answer and counterclaim. Among other things, the answer denies the jurisdiction of the court and seeks, by means of the counterclaim, a refund of monies paid under the contract. The parties engaged in discovery and filed answers to interrogatories.
On October 6,1992, the defendant filed a motion to dismiss arguing that the court lacked personal jurisdiction over the defendant. On November 10,1992, the plaintiff, in opposition, filed an affidavit of John Murtha with accompanying exhibits.
On December 11,1992, the motion to dismiss was scheduled for hearing before the court. On the day of hearing the defendant filed affidavits of Patrick Champigny and of Daniel Posnansky.
*234 On December 11, 1992, the court, after argument and determining that Daniel Posnansky was not an agent of either party, allowed defendant’s motion to dismiss.
Facts
The plaintiff operates a marketing survey firm in Boston, Massachusetts. The defendant manufactures medical supplies, primarily canes and crutches, in Quebec, Canada. A third party, Daniel Posnansky, brought the plaintiff and defendant together. The parties had never conducted any business together before 1990. On June 25,1990, representatives of the plaintiff travelled to defendant’s offices in Quebec for a first meeting. The purpose was to discuss the terms of the proposed marketing survey to be conducted by the plaintiff and its cost. After this meeting, the plaintiff prepared a document that set out the terms agreed upon in the meeting. The agreement, signed by the plaintiff, was mailed to the defendant in Quebec, where it was signed by the defendant. The defendant returned the executed agreement by mail to the plaintiff. The agreement provided it would be governed by Massachusetts law. The defendant knew that the agreement was invalid in Quebec because it was in the English language not French, which is required by Quebec law. The defendant paid $11,833 upon execution of the agreement dated June 28,1990.
During the period in which the survey was being prepared by the plaintiff, it contacted the defendant in Quebec on a number of occasions by telephone and letter in order to obtain additional information. The defendant did not participate in the preparation of the survey report or in the survey itself and it did not direct the efforts of the plaintiff in either regard.
On September 12,1990, representatives of the plaintiff again travelled to defendant’s offices in Quebec for a second meeting. The meeting was arranged by a telephone call from the plaintiffs representatives. They presented a written report of their research as to phase 1 of the project. After the September 12,1990 meeting in Quebec, the parties communicated by telephone on several occasions regarding the defendant’s dissatisfaction with the survey report and its refusal to pay the balance of the contract price.
The defendant is a Quebec corporation whose principal place of business is in Quebec, Canada. While there have been some sales of its products in Massachusetts beginning in 1990, the defendant does not maintain an office in Massachusetts. Neither does it maintain inventory, assets, or any agent in Massachusetts.
In 1990 sales of the defendant’s products in Massachusetts amounted to approximately forty thousand ($40,000) dollars. Through September 13,1991, there were additional sales of approximately ninethousand ($9,000) dollars. All products shipped to Massachusetts were sold to a single distributor, Klick Product Sales Corp., in Lynn, Massachusetts. The only relationship between that corporation and the defendant is the relationship of distributor and manufacturer. The corporations do not have any common stockholders, officers, or directors. Neither is a subsidiary or affiliate of the other. “Klick” is a registered trademark of the defendant under which the defendant sells its products. Because the only business of Klick Product Sales Corp. is selling “Klick” canes and crutches manufactured by the defendant, the defendant has authorized that company to use the Klick trademark.
Discussion
When a motion to dismiss for lack of personal jurisdiction is filed under Mass. R. Civ. P., Rule 12(b) (2), the burden is on the plaintiff to prove sufficient facts to support an exercise of jurisdiction. See Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978); Rye v. Atlas Hotels, Inc., 30 Mass. App. Ct. 904 (1991); Nicholas Associates, Inc., v. Starr, 4 Mass. App. Ct. 91, 93-94 (1976).
Generally, a claim of personal jurisdiction over a non-resident defendant presents a twofold inquiry; (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under state law consistent with basic due process requirements mandated under the United States Constitution? Jurisdiction is permissible only when both questions *235 draw affirmative responses. Since we have stated that our long arm statute, G.L.c. 223A, functions as “an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States,” Automatic Sprinkler Corp. of America v. Seneca Food Corp., 361 Mass. 441, 443 (1972), the two questions tend to converge. General Laws c. 223A, §3, cannot authorize jurisdiction which is constitutionally unacceptable, even though the fact pattern asserted in support of jurisdiction apparently satisfies the statute’s literal requirements. Likewise, G.L.c. 223A, §3, asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established. Although presented with jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites. Good Hope Industries v. Rider Scott Company, 378 Mass. 1, 5 (1979).
Determination ofwhether exercising personal jurisdiction is proper is sensitive and specific to the facts in each case and every case must turn on its own facts. Droukas v. Divers Training Academy, 375 Mass. 149 (1978). “Few answers will be written in black and white. The greys are dominant and even among them the shades are innumerable.” Kulko v. Superior Court, 436 U.S. 84, 92 (1978), citing Estin v. Estin, 334 U.S. 541, 545 (1948).
The constellation of facts in a case is critical to resolution of both the statutory and constitutional questions to be determined. Each reported case dealing with the long-arm statute, of course, carefully reviews all the facts that form the basis for the conclusion that personal jurisdiction either exists or does not exist; but these opinions often fail to specify whether the conclusion as to jurisdiction relates to the statutory question or the constitutional question. This type of factual analysis unfortunately often causes the two questions to converge rather than being treated separately.
In the case before the court, there is no genuine dispute as to whether the relationship between the defendant and the Commonwealth presents minimum contacts sufficient to meet due process or constitutional requirements. Counsel for defendant conceded at oral argument that due process standards were met.
These minimum contacts must demonstrate that the maintenance of the suit does not offend “traditional notions of fair play and substantial justice.” International Shoe Co. v. Washington, 326 U.S. 310 (1945). “It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of coordinating activities within theforum state, thus invoking the benefits and protections of its laws.” Hanson v. Denckla, 357 U.S. 235, 253 (1958). In this case the defendant knew that the agreement concluded in Quebec, in the event of dispute, could not be litigated there because it was not written in the French language. Any dispute, if it had to be litigated, would have to be decided in the courts of the Commonwealth, if the defendant submitted to jurisdiction.
In addition, at least for the purpose of due process analysis, defendant’s business with a distributor in the commonwealth can be considered and strongly suggests that the hardship of appearing in the courts of the commonwealth, if any, is slight. Thus, in this case there is no due process impediment to asserting personal jurisdiction over the defendant:
Finding there is no due process or constitutional problem, however, obviously leaves the issue of whether the constellation of facts in the case before the court satisfies the long-arm statute’s literal requirements for jurisdiction.
General Laws, c. 223A, provides in pertinent part:
A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or in equity arising from the persons (a) transacting any business in this commonwealth;...
The courts have held that the phrase “transacting any business” should be broadly and liberally construed. Hahn v. Vermont Law School, 698 F. 2d 48, 49 (1st Cir. 1983). *236 In order to be engaged in “doing business, “ more than a “one-shot” transaction has been required. See Sterling Heel Co. v. Missouri Heel Co., 222 F. Supp. 986, 988 (D. Mass. 1963). Single or isolated transactions do not satisfy the “doing business” standard for invoking jurisdiction. See, e.g. , Waltham Precision Instrument Co., v. McDonnell Aircraft Corp., 203 F. Supp. 539 (D. Mass.), aff'd, 310 F. 2d 20 (1st Cir. 1962).
In interpreting G.L.c. 223A, the courts have recognized that with modern communication methods, the physical presence of the defendant in Massachusetts is not required. Good Hope Industries, Inc. v. Rider Scott Company, 378 Mass. 1, 10 (1979); Buctouche Fish Market, Ltd. v. City Seafood, Inc., 735 F. Supp. 441, 442 (D.C. Mass. 1990).
Modern technology has taken us far beyond the point where two men must stand in each other’s physical presence to transact business. Widespread use of telephones and mails make actual physical presence unnecessary in many cases. Similarly, non-dispositive is the fact that the Plaintiff, made the initial solicitations with respect to the transaction, (citations omitted) Good Hope Industries at 82.
In the instant case, the defendant’s contacts with Massachusetts in regard to the transaction out of which the plaintiffs cause of action arose were limited. The defendant did not initiate the original contact between itself and the plaintiff. This was accomplished by athird party who was nottheagentforeitherparty. Thereafter, itwas the plaintiffwho pursued the establishment of abusiness and contractual relationship. The plaintiffs representatives travelled to the defendant’s place of business in Quebec to negotiate the terms of the proposed contract. Upon the completion of those negotiations, the contract was prepared by the plaintiff; but it was mailed to the defendant in Quebec, and itwas executed there. While the parties communicated by mail and telephone, such communications were not frequent or extensive. The defendant mailed a partial payment of the agreed-upon price for the marketing survey to the plaintiff in Massachusetts and provided further information to the plaintiffs upon request by telephone, but it did not actively participate in the performance of the contract. Neither did it supervise any aspect of the work done by the plaintiff. When the initial phase of the projectwas completed, again itwas the plaintiff s representative who traveled to Quebec to presentthe report to the defendant’s representatives. Even the conduct that is alleged to have resulted in the defendant’s breach of the contract, its refusal to pay the balance of the agreed-upon price, was an act that took place in Quebec rather than in Massachusetts.
A review of the Massachusetts cases and their factual settings compared to the factual background in the instant case supports defendant’s position that defendant’s contacts with Massachusetts do notallow aconclusion that itwas transacting business in the Commonwealth.
In “Automatic” Sprinkler Corp. v. Seneca Foods Corp., supra, although it was the defendant who initiated contact by telephone with the plaintiff, itwas the plaintiffs representative who travelled to the defendant’s place of business in New York to discuss the purchase of one of plaintiffs machines. A preliminary agreement was signed there. Later, defendant signed a purchase order in New York and mailed it to the plaintiff in Massachusetts. Plaintiff received the signed purchase order and mailed an invoice to the defendant, who returned partial payments by mail to the plaintiff in Massachusetts. Delivery of the machine was made to the defendant in New York. These were the defendant’s only contacts with Massachusetts. Defendant refused to remit the balance of the purchase price. The court concluded the contacts and facts were insufficient to confer personal jurisdiction over the defendant.
In Nichols Associates, Inc. v. Starr, supra, an action was begun against a nonresident to recover the value of surveying and related services. The defendant, a Connecticut-based land developer, never travelled to the plaintiffs offices but communicated by *237 telephone with the plaintiff or in person when the latter’s representatives were in Connecticut, mailings of completed work done in the plaintiffs Holyoke, Massachusetts office were made to the defendant. Invoices were also sent to the defendant. Given these facts, the court determined that the defendant was not transacting any business in Massachusetts within the meaning of G.L.c. 223A, §3 (a).
In Droukas v. Divers Training Academy, Inc., supra, the defendant’s only relevant contacts with Massachusetts were the placement of an advertisement in a publication distributed in Massachusetts, the receipt of a telephone call from the plaintiff in Massachusetts regarding the purchase of two marine engines, the sending of mail to confirm the sale, and the shipment of the engines “collect” to the plaintiff in Massachusetts. The defendant, a Florida corporation, maintained no offices in Massachusetts and held no assets in the Commonwealth. The court concluded that “the defendant’s contacts with Massachusetts were insufficient to constitute the transaction of business in the Commonwealth so as to come within the reach of §3 (a) ." Id. See also Heins v. Wilhelm Loh Wetzlar Optical Machinery, supra; Raleigh Rug Co. v. R.A. Civitello Co., 23 Mass. App. Ct. 1025, 1026 (1987); Hood v. American M.A.N. Corp., 20 Mass. App. Ct. 937, 939-40 (1985).
In cases in which a foreign corporation was held to have transacted business in Massachusetts, the extent of the contacts was much greater than in the present case. See Carlson Corp. v. University of Vermont, 380 Mass. 102, 105 (1980) (contact actually signed in Massachusetts); Good Hope Industries v. Ryder Scott Co. 378 Mass. 1, 4 (1979) (defendant was actively involved in ongoing business relationship with defendant for over one year, initiated over 50 telephone calls, and sent numerous billings to plaintiff); Hahn v. Vermont Law School, 698 F. 2d 48 (1st Cir. 1983) (defendant solicited students in Massachusetts by recruiters and advertising, 105 of the class was from Massachusetts, and defendant mailed an application and offer of admissions, which was accepted, to plaintiff in Massachusetts); Buctouche Fish Market, Ltd. v. City Seafood, Inc., 735 F. Supp. 441 (D. Mass. 1990) (one defendant negotiated the contract with the Massachusetts plaintiff over the telephone, and the president of the other defendant came to Massachusetts to purchase lobsters from another supplier, thereby allegedly breaching his contract with the plaintiff); Cunningham Packing Corp. v. Florence Beef Co., 529 F. Supp. 515 (D. Mass. 1982) (dispute between parties arose from the latest of a great volume of transactions which had taken place between them over a four-year period during which they had sold each other a substantial amount of meat products involving the transmittal by defendant to plaintiff in Massachusetts of hundreds of letters, invoices, order forms, and telephone calls; defendant ordered the beef which was the subject of this dispute from plaintiff in Massachusetts; documents completing the transaction were exchanged by mail; and the beef was shipped from Massachusetts to the defendant’s business in Baltimore).
Finally, with regard to the specific statutory requirements for a finding of jurisdiction, not only must the plaintiff demonstrate that the defendant transacted business in Massachusetts but also that its cause of action arose out of that transaction. The language of G.L.c. 223A, §3 (a) is clear that a court may exercise personal jurisdiction only las to a cause of action... arising from the person’s... transacting any business in this commonwealth” (emphasis added). G.L.c. 223a, §3(a). The plaintiff asserting jurisdiction must show a rational nexus between his cause of action and the transaction of business in Massachusetts by the defendant within the literal meaning of G.L.c. 223A, §3 (a). See Heinz v. Wilhelm Loh Wetzlar Optical Machinery, 26 Mass. app. Ct. 14, 18 (1988).
Because defendant’s only other Massachusetts business was with a distributorship in Lynn and was entirely independent from the transaction that is the subject of the case before the court, it does not add any weight to the plaintiffs position that the defendant’s activity satisfied the literal requirements of the long-arm statute as to “transacting business in this Commonwealth.”
The court concludes that the case before it is similar to those hypothetical cases *238 referred to in Good Hope Industries, Inc. v. Ryder Scott Co., supra at 7: “Although presented with jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites.”
Finally, as to the plaintiffs claim that the defendant waived its jurisdictional objection by filing an answer and asserting a counterclaim, the court finds no merit to the plaintiffs position and does not adopt it. See 6 C.WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE, §1416 (2 ed. 1990).
For all the above reasons the report is dismissed.