Whitehead, J.
This is an action brought by the members of a family alleging, in essence, professional malpractice by an insurance agent relating to the sale and servicing of certain policies of insurance. The defendant agent, J. Michael Roney, d.b.a. Roney & Company (Roney), moves to dismiss the plaintiffs’ claims on the ground that the court does not have personal jurisdiction over him, or in the alternative, that the complaint fails to state a claim upon which relief may be granted. For the following reasons, the court concludes that personal jurisdiction lies over the defendant. However, all but one of the counts of the amended complaint must be dismissed for failure to state a claim upon which relief may be granted.
Background
Defendant Roney is an insurance agent based in California who solicited the plaintiffs Jonathan Light and Joanne H. Light (collectively, the Lights) to place investments and purchase insurance through him. During the period from 1988 to 1994, Roney solicited the Lights’ business by attempting to convince them to make various investments by which he would earn a commission. In 1988, Roney sold the Lights three life insurance policies issued by Executive Life Insurance Company (the Executive Life policies) on the lives of the Lights’ three children (collectively, the children, or the minor-plaintiffs). Roney proposed the policies to the Lights as an investment to fund the children’s college educations, and the Lights purchased the policies for that purpose.
In 1990, the Lights learned that the Executive Life policies were a high-risk investment. In March 1991, following numerous questions from the Lights concerning whether the policies continued to be a sound investment, Joanne Light signed a form requesting that the policies be surrendered and mailed it to Roney in California. The policies were never surrendered. In April 1991, the California Insurance Commission put Executive Life into rehabilitation. The policies now have no cash or surrender value and are essentially worthless. The plaintiffs filed this lawsuit on January 19, 1995.
Discussion
Personal Jurisdiction. A complaint must be dismissed if the court lacks personal jurisdiction over the defendant. Mass.R.Civ.P. 12(b)(2). When the defendant files a Rule 12(b)(2) motion alleging lack of personal jurisdiction, the plaintiff has the burden of establishing facts upon which the existence of personal jurisdiction is warranted. Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978); Nichols Assocs. v. Starr, 4 Mass.App.Ct. 91, 93 (1976). The plaintiff must establish facts to satisfy a two-fold inquiry: (1) whether an assertion of jurisdiction is authorized by statute; and (2) whether an exercise of jurisdiction is consistent with the U.S. Constitution’s due process requirements. Carlson Corp. v. University of Vermont, 380 Mass. 102, 105 (1980).
Under the Massachusetts longarm statute, “[a] court may exercise personal jurisdiction over a person, who acts ... as to a cause of action . . . arising from the person’s . . . transacting business in the commonwealth.” G.L.c. 223A, §3(a). “(G)enerally the purposeful and successful solicitation of business from residents *347 of the Commonwealth by a defendant or its agent will suffice to satisfy [the transacting business] requirement.” Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1993) (citations omitted). The plaintiffs have established that such is the case here. Plaintiff Jonathan Light has stated, by way of affidavit, that the defendant solicited the plaintiffs’ business by mail and by telephone at the plaintiffs’ home in Massachusetts. Defendant sold the Executive Life policies to the Lights via telephone calls and literature directed to them at their residence in Massachusetts. Thus, the plaintiffs have established that the defendant purposefully and successfully solicited business from them in Massachusetts. That being so, and since their cause of action arises from such solicitation, the longarm statute gives this court jurisdiction over defendant.
Moreover, an exercise of jurisdiction in this case conforms with Fourteenth Amendment due process requirements. The plaintiffs have shown that the defendant purposefully established “minimum contacts” in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the form state, thus invoking the forum’s benefits and protections. Id at 475. The plaintiffs claim must arise out of, or relate to the defendant’s forum contacts. Id at 472. In addition, the exercise of jurisdiction must not offend “traditional notions of fair play and substantial justice.” International Shoe Co. v. Washington, 326 U.S. 310, 316 (1940). In practical terms, this means that an assertion of jurisdiction must be tested for reasonableness, taking into account the burden on the defendant of litigating in the forum, the forum’s interest in adjudicating the dispute, and the plaintiffs interest in obtaining relief. Tatro, 416 Mass. at 773 (citing International Shoe, 326 U.S. at 316).
The defendant solicited business in Massachusetts and thus may reasonably be concluded to have invoked the benefits and protections of Massachusetts laws. Id. at 773 (citing Hahn v. Vermont Law School, 698 F.2d 48, 51 (1st Cir. 1983)). Moreover, it is reasonable to expect Roney, who drew business and income from Massachusetts, to defend himself here. Id. By contrast, requiring the plaintiffs to bring suit in another forum “might pose an insuperable barrier to judicial consideration of [their] claim[s].” Id. Massachusetts has a “manifest interest” in providing residents like the Lights with a convenient forum for redressing injuries inflicted by out-of-state actors. Burger King, 471 U.S. at 473. For these reasons, the court’s exercise of personal jurisdiction over the defendant is reasonable according to traditional notions of fair play and substantial justice, and therefore does not offend the Fourteenth Amendment.
Statute of Limitations. The defendant asserts that all of plaintiffs’ claims have been brought outside the applicable statute of limitations. Plaintiffs allege various theories of liabilify in their Amended Complaint: negligence, breach of contract, and violations of G.L.c. 93A. Plaintiffs’ claims are, in essence, attempts to recover for the defendant’s alleged wrong-doing committed within the professional-client relationship.[2] In determining which statute of limitations to apply, the court looks to the claims’ “gist.” Barber v. Fox, 36 Mass.App.Ct. 525, 529 (1994) (applying contract statute of limitations to torts of fraud and breach of fiduciary duty). In Massachusetts, a plaintiff may traditionally elect between causes of action without necessarily labeling his/her claims as, e.g., “tort” or “contract” claims. Hendrickson v. Sears, 365 Mass. 83, 84 (1974). Massachusetts law acknowledges that a claim to recover for wrong-doing within a professional-client relationship sounds both in both contract and tort. Hendrickson states, “That limitation statutes should apply equally to similar facts regardless of the form of proceeding is intrinsically a sound proposition. To that end the Legislature has in some situations made explicit provision for the same limitation period for particular types of claims, whether in contract or tort." 365 Mass. at 85 (citations omitted; emphasis added). Massachusetts also has a three-year statute of limitations for malpractice cases which applies to “[a]ctions of contract or tort for malpractice, error or mistake . . .’’by attorneys, physicians and various other professionals. G.L.c. 260, §4 (emphasis added).[3] In other words, in the context of injuries arising from professional-client relationships, it is unimportant how the cause of action is labeled.
While the plaintiffs’ Amended Complaint does not specifically allege a classic malpractice cause of action, it does seek redress for wrongs which arose in the context of their professional relationship with the defendant. The “gist,” therefore, of the plaintiffs’ tort and contract claims is essentially professional malpractice or professional negligence, which carries a three-year statute of limitations. G.L.c. 260, §2A; see also, G.L.c. 260, §4. The statute of limitations began to run when the plaintiffs knew or should have reasonably known of their injury. Hendrickson, 365 Mass. at 91. Based on the facts alleged in the Amended Complaint, the plaintiffs knew of the riskiness of the Executive Life Policies by 1990, and knew that their attempts to surrender the policies had been unsuccessful by March 1991. Thus, by March 1991 (at the latest) the plaintiffs knew or reasonably should have known that their investments in the Executive Life policies were not sound. The plaintiffs filed their lawsuit in January 1995, more that three years later, and their tort and contract claims are therefore time-barred.
Hendrickson v. Sears does not compel a different result. There the issue was when did the plaintiffs claim against an attorney for malpractice accrue. Id at 84 n.2,91. The Hendrickson Court specifically avoided *348 the question of whether to apply a tort or contract statute of limitations. Id at 86.[4] The plaintiffs argue that Hendrickson supports their attempts to treat their claims as contractual in that it the court stated, “[t]he traditional view of an action for damages resulting from the negligence of an attorney is that the gist of the action, regardless of its form, is the attorney’s breach of contract, and that that cause of action therefore accrues at the time of the breach.” Id. at 86. This phrase does not, as the plaintiff proposes, transform a cause of action for professional negligence into one for breach of contract. Rather, it is more appropriately read to mean that a claim for negligence may be based on the breach of a contractual duty implied in a professional-client relationship, and that traditionally, such a cause of action accrues (i.e. the statute of limitations begins to run) when the breach occurs.[5]
Finally, claims under the consumer protection statute, G.L.c. 93A, must be brought within four years after they accrue. G.L.c. 260, §5A. Plaintiffs allege two theories of c. 93A liability: (1) that Roney’s failure to advise them of the risks associated with the policies was unfair and deceptive; and (2) that Roney’s failure to surrender the policies was unfair and deceptive. As is noted above, the plaintiffs’ Amended Complaint alleges that they learned of the riskiness of the policies in 1990. Their claim on the theory that the defendant failed to advise them of such risk (Count III) was not filed within four years and, thus, is not timely. By contrast, the plaintiffs requested that the defendant surrender the policies in March 1991. Their lawsuit followed in January 1995, less than four years later. Thus, Count VI, the plaintiffs’ c. 93A claim based on the defendant’s failure to surrender the policies is, on its face, timely and should not be dismissed for failure to meet the statute of limitations.
The Minor Plaintiffs’ Claims. The minor plaintiffs seek refuge from any application of the statute of limitations against them, arguing that G.L.c. 260, §7 tolls the running of the statute of limitations for a minor’s cause of action until the minor reaches the age of eighteen. It may well be true that §7 does toll the running of the statute in this case. However, the counts brought in favor of the minor plaintiffs must still be dismissed for the following reasons, which although not briefed by the parties, were addressed at oral argument. The minor plaintiffs’ claim is essentially that the defendant tortiously interfered with a prospective advantage, i.e., their ability to partake of their parents’ savings and investments to fund their college educations. The minor plaintiffs have not, however, alleged facts sufficient to establish a causal link between the defendant’s tortious conduct and their pecuniary loss.
This case is similar to Lewis v. Corbin, where the plaintiff alleged that the defendant, an attorney, had fraudulently contrived to have one of the plaintiffs relatives improperly execute a codicil to a will, thereby making it ineffective, and that had the codicil been effective, the plaintiff would have taken from the relative’s estate. 195 Mass. 520, 521-22 (1907). The Court held that the plaintiff failed to show that he was damaged by the defendant’s wrongful acts, i.e., there was no showing that the failure of the codicil was “close enough to cause him pecuniary loss, apart from the happening of subsequent events.” Id. at 526. In other words, even absent the tortious conduct, the gift might never have taken place. Id. Similarly here, the minor plaintiffs were the intended beneficiaries of their parents’ investment; the policies were intended to fund the childrens’ college educations. As in Lewis, however, there is not a sufficient connection between the harm to the minor plaintiffs and the defendant’s acts. That is, even absent the defendant’s alleged tortious acts, the parent-plaintiffs might have decided that a different investment suited them better, sold the policies without a loss, and subsequently lost all of the college fund money on some other investment. Because the causal connection between the defendant’s allegedly tortious acts and any harm suffered by the minor plaintiffs is too speculative, the defendant is entitled to a dismissal of their claims.
ORDER
For the foregoing reasons, the defendants’ Motion to dismiss is ALLOWED IN PART. Counts I, II, III, IV and V are DISMISSED. Further, all claims of the minor plaintiffs are DISMISSED. Count VI shall stand insofar as relief is sought on behalf of the adult plaintiffs.

Count I of the plaintiffs’ Amended Complaint, which purports to state a cause of action for breach of contract alleges that Roney breached his “contractual obligation” to advise the Lights of the risks associated with the insurance policies. Count II, the plaintiffs’ negligence count, states that Roney negligently failed to advise the Lights of the risks associated with the insurance policies. Count III alleges that Roney’s failure to advise the Lights of the risks was unfair and deceptive, in violation of G.L.c. 93A. Count IV alleges that Roney breached his contractual obligation to surrender the insurance policies. Count V alleges that Roney negligently failed to surrender the polices. Count VI alleges that Roney’s failure to surrender the policies was unfair and deceptive, in violation of G.L.c. 93A.

The statute does not specifically list malpractice by an investment counselor or insurance agent as a circumstance to which it applies. It does, however, indicate the existence of a policy in Massachusetts of requiring professional malpractice cases to be filed within three years of accrual, and is instructive in determining the appropriate statute of limitations to apply here.

“[T]he outcome cannot turn on whether [the claim] is governed by §2 [contract statute of limitations] or by §2A [tort statute of limitations] . . . We have not been asked to determine that question, and we do not.” Id.

Moreover, as is discussed above, the statute of limitations for professional malpractice is three years. See, G.L.c. 260, §4.