Raymond & Marjorie NELLIGAN, Steve & Helen Kish, Marvin & Margaret Bullion, Vincent & Cecile Schikora, Albert & Sandra Chamberlin, Robert & Elizabeth Tilley, Arthur & Helen Cull, Robert & Mary Furby, Patrick Gainer, Howard & Lenore Hicks, Bernard & June Stephenson, Charles & Fay Taylor, Joseph & Veda LaCelle, Plaintiffs,

v.

JOHNS–MANVILLE SALES CORPORATION, Standard Asbestos Manufacturing and Insulation Co., et al., Defendants.

Nos. 80–72181 to 80–72192, 80–72194 and 80–72195.

United States District Court, E. D. Michigan, S. D.

Aug. 25, 1982.

Michael B. Serling, Southfield, Mich., Robert E. Sweeney, Sweeney, Mahon & Vlad, Cleveland, Ohio, for plaintiffs.

Dickinson, Wright, McKean, Cudlip & Moon, Michael G. Vartanian, Detroit, Mich., for defendant Johns-Manville.

Deborah A. Johnston, Southfield, Mich., for defendant Standard Asbestos Manufacturing.

MEMO RE MOTION OF DEFENDANT STANDARD ASBESTOS MANUFACTURING AND INSULATION COMPANY TO DISMISS AND QUASH SERVICE

THORNTON, District Judge.

The instant lawsuits have been brought by plaintiffs against a number of defendants, including Defendant Standard Asbestos Manufacturing And Insulation Company seeking damages for injuries allegedly suffered by them as a result of exposure to products containing asbestos. Defendant Standard has moved to dismiss and quash service as to it. The reasons are set forth in its Motion as follows:

1. The Defendant STANDARD ASBESTOS MANUFACTURING & INSULATING COMPANY, must have substantial contacts with the State of Michigan before the Court may exercise judicial power over it.

2. In that the Defendant has conducted such little business within Michigan, the minimum contacts, requisite to establishing personam jurisdiction are not present.

3. Based on Federal Rules of Civil Procedure No. 4, the Court should subject a foreign corporation to limited jurisdiction only where it does not offend the traditional notions of fair play and substantial justice so that due process of law as required by the Fourteenth Amendment is not violated.

4. STANDARD ASBESTOS MANUFACTURING & INSULATING CO'S less than minimal contacts with the State of Michigan do not support this Court's limited jurisdiction which does, in fact, offend the notions of fair play and substantial justice.

5. This Motion is supported by the Affidavit of Fred D. Law, Vice-President of STANDARD ASBESTOS MANUFACTURING & INSULATING CO., and by the Brief in Support of Motion.

The affidavit of Fred D. Law is attached to Defendant Standard's Motion and reads as follows:

FRED D. LAW, being duly sworn states: I am a Vice-President of STANDARD ASBESTOS MANUFACTURING & INSULATING COMPANY, and I have held that position for several years. As such, I am familiar with the operation of STANDARD ASBESTOS MANUFACTURING & INSULATING COMPANY and, more specifically, of the matters set forth in this Affidavit. If called as a witness, I could testify competently as follows:

1. STANDARD ASBESTOS MANUFACTURING & INSULATING COMPANY is a closely held Missouri corporation. Since 1959, all the stock has been owned by members of the Ryder family. I am Vice-President of STANDARD ASBESTOS MANUFACTURING & INSULATING COMPANY. The gross sales of STANDARD ASBESTOS for 1982 are estimated to be $2,750,000.00.

2. STANDARD ASBESTOS is in the business of selling insulation materials purchased from other companies, as well as furnishing and installing insulation on a contract basis. The business activities of STANDARD ASBESTOS are conducted primarily in the states of Missouri, Kansas, Oklahoma and Texas with corporate headquarters in Kansas City, Missouri. Those products sold by STANDARD ASBESTOS are sold primarily to other insulation contractors and users who use those products in their construction and maintenance activities. To the best of our knowledge there have been no direct sales, resales or other distribution of our products to Michigan, other than as set forth in paragraphs three and four.

3. Since it has been in business, STANDARD ASBESTOS has manufactured three types of products containing asbestos.

SIMCO # 9, 1-coat cement, was manufactured between 1956 and 1970, and contained 1% asbestos fiber. It was used primarily for insulation of fittings.

SIMCO # 55, Rockwell Cement, was manufactured between 1940 and 1970, and contained approximately 1% asbestos fiber.

AIRCELL PIPE COVERING was manufactured between 1945 and 1951.

WEATHERKOTE ASPHALT MASTIK was manufactured from 1940 to 1970, and contained approximately 15% Asbestos fiber and emulsion. It was packaged in 5-gallon and 55-gallon steel drums, and came in a semi-liquid form that did not produce dust. It was used as outdoor weatherproof coating.

Over the years that STANDARD AS-BESTOS has been in the business, it has also distributed products that did not contain asbestos.

4. The following chart illustrates the amount of Michigan sales as they relate to total sales:

| | TOTAL SALES | MICHIGAN SALES | % OF TOTAL |
|---|---|---|---|
| 1956 | $1,175,646.63 | $ 5,357.00 | .45 |
| 1957 | $ 733,140.74 | $ 15.35 | .002 |
| 1965 | $ 646,290.09 | $ 3,198.75 | .49 |
| 1966 | $ 781,537.73 | $16,516.29 | 2.11 |
| 1968 | $ 856,667.96 | $ 1,006.31 | .11 |

Inasmuch as many of our records were destroyed by a flash flood on May 18, 1974, we have no documentation as to exactly what types of products were shipped to Michigan. Inasmuch as we sold products manufactured by other companies, some of which did not contain asbestos, we are not certain that any asbestos-containing products reached Michigan whatsoever.

5. STANDARD ASBESTOS was established in 1918, originally incorporated in Missouri by members of the Ryder family and three nonrelated individuals. I have been associated with STANDARD ASBESTOS since 1951. Having made a careful search of this company's records, I am able to say that beyond the occasional sales mentioned in paragraph 3, STANDARD ASBESTOS has had absolutely no contact with the State of Michigan. The records reveal that:

(1) STANDARD ASBESTOS has never owned, leased or rented any property in Michigan nor has it ever maintained an office in Michigan.

(2) STANDARD ASBESTOS has never advertised, or in any way attempted to establish a sales program within Michigan.

(3) STANDARD ASBESTOS' stock is entirely held by the Ryder family and has never been offered in the State of Michigan.

(4) STANDARD ASBESTOS has never maintained a telephone listing, a bank account in Michigan.

(5) STANDARD ASBESTOS has never incurred any tax liability; franchise, income or otherwise in Michigan, nor has it collected any Michigan sales tax. In essence, STANDARD ASBESTOS has had no connection with the State of Michigan beyond the mentioned sales.

(Signed) ———————————
FRED D. LAW

Subscribed and sworn to before me this 18th day of March, 1982

(Signed)
NOTARY PUBLIC

It is of course the position of Defendant Standard that the contacts which it has had with the forum state are insufficient and too insignificant to subject it to the Michigan Long Arm Statute, M.S.A. § 27A.715 [M.C.L.A. § 600.715] for the purpose of the exercise of in personam jurisdiction by this Court. Plaintiffs in their oral argument and in their briefs argue strenuously on the opposite side of this issue. The cases on this subject are legion and no two are identical despite strong similarities. This Court recently considered a similar motion involving a similar fact situation brought by Rock Wool Manufacturing Company, Inc., previously a defendant herein. Reference is hereby made to the Memorandum entered January 21, 1982 in which this Court ruled that there was insufficient basis for the exercise of personal jurisdiction over that defendant pursuant to the Michigan Long Arm Statute. *Nelligan, et al. v. Johns-Manville Sales Corporation, et al.,* 530 F.Supp. 654.

It appears to the Court that the business done by Standard in Michigan was sporadic. Standard did not do such business pursuant to a marketing system. It did not do such business on a continuous or systematic basis. See *Doebler v. Stadium Productions Ltd.,* 91 F.R.D. 211 (W.D. Mich. S.D. 1981); *Hapner v. Rolf Brauchli, Inc.,* 404 Mich. 160, 273 N.W.2d 822 (1978); and *Khalaf v. Bankers and Shippers Insurance Co.,* 404 Mich. 134, 273 N.W.2d 811 (1978). The "traditional notions of fair play and substantial justice" test is still the guideline for determining whether the exercise of

jurisdiction is reasonable. *International Shoe Company v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

█ The Court is of the opinion that the situation with respect to Defendant Standard is comparable to that of Rock Wool (530 F.Supp. 654 (1982)). The determination made there, including the rationale therein and the cases cited therein, is equally applicable and appropriate here. The Motion of Defendant Standard Asbestos should be GRANTED. An order may be presented accordingly.