RICHARD T. SPLAINE *vs.* MODERN ELECTROPLATING, INC.

Suffolk.   February 14, 1984. — March 13, 1984.

Present: GREANEY, C.J., CUTTER, & WARNER, JJ.

*Jurisdiction,* Nonresident, Long-arm statute.

The contacts with Michigan of a Massachusetts corporation, consisting of placing advertisements ''in magazines directed toward persons interested in refurbishing automobiles,'' receipt of telephone calls from a Michigan resident in response to an advertisement, and receipt of chrome automobile parts sent by the Michigan resident to the corporation for replating, were insufficient to confer on a Michigan court jurisdiction over the corporation.   [614-620]

CIVIL ACTION commenced in the Superior Court Department on March 12, 1982.

Motions for judgment on the pleadings were heard by *Pierce, J.*

*Donald M. Hadge* for the defendant.

*Margaret A. O'Reilly* for the plaintiff.

CUTTER, J.   Splaine, a resident of Michigan, recovered $8,431.02 by a default judgment in an action in Michigan against Modern Electroplating, Inc., Classic Chrome division (Chrome). An action was brought on the Michigan judgment against Chrome in the Superior Court in Massachusetts.  Chrome admitted in its answer that it had received in June, 1981, a summons and complaint in the Michigan action.  These it apparently disregarded. Splaine and Chrome each filed a motion for judgment on the pleadings in the Massachusetts action.  The docket shows that each such motion was denied.  The trial judge seems to have treated the motions essentially as seeking summary judgment, which he granted for Splaine.  From that judgment, in the amount of the Michigan judgment plus interest, Chrome has appealed.  The facts are stated on the basis of the pleadings and affidavits of Splaine and of Fred J. Saltzberg, general manager of Chrome.

Splaine's letterhead shows him to be operating in Grand Rapids, Michigan, apparently as a dealer in "parts . . . and other items of interest to . . . collectors of Mercedes cars". He had seen advertisements by Chrome "in magazines directed toward persons interested in refurbishing automobiles," including Hemming's Motor News, a magazine which circulates to the group indicated. In response to such an advertisement, Splaine inquired of Saltzberg (then apparently in Massachusetts at Chrome's only place of business) about the cost of replating chrome parts for a 1961 Mercedes automobile. Saltzberg, in reply to Splaine's inquiry, suggested that the parts be sent to Chrome so that an estimate could be given. Shortly after the parts were submitted to Chrome, one of its employees gave Splaine an estimate for the work of a maximum of $850 plus $15.58 for shipping and insurance. There was an agreement that the work would be "show quality" and "would be completed within four to six weeks." Splaine "received the parts . . . eleven weeks later . . . with a c.o.d. shipping charge of $494.16." Splaine "determined that the parts had been ruined by" Chrome and complained to Saltzberg about "the unsatisfactory work." Saltzberg asked that the parts be returned to Chrome for inspection. The parts again were sent to Chrome and, "after several additional phone calls and conversations," they were returned to Splaine about three months later in the same condition they had been in when first sent by Chrome to Splaine. There is no showing that Chrome directly acted outside of Massachusetts at any time and one of Saltzberg's affidavits asserts that Chrome has engaged in no commercial or other activity in Michigan.

Splaine initiated all contacts with Chrome, except that Chrome "may have" called Splaine once in response to the latter's request for an estimate. By affidavit Chrome claimed not to advertise in the publications mentioned by Splaine to solicit business in Michigan but only to solicit business in Massachusetts and that it had no contact with Splaine "through the mail except for the return shipment of" Splaine's property.

1. We assume that Michigan by enacting Mich. Comp. Laws §§ 600.705 and 600.715 (1979),[1] has attempted to subject nonresidents to Michigan's full potential limited jurisdiction over nonresidents. See *Sifers* v. *Horen,* 385 Mich. 195, 198-200, and dissent at 204 (1971). See also *Chrysler Corp.* v. *Fedders Corp.,* 643 F.2d 1229, 1236-1237 (6th Cir.), cert. denied, 454 U.S. 893 (1981), and cases cited. We may give full faith and credit to the Michigan judgment, however, only if Chrome had "minimum contacts" with Michigan sufficient to permit the Michigan court to exercise jurisdiction over it, as a matter of due process, under the applicable decisions of the Supreme Court of the United States and the Supreme Judicial Court. See *McDade* v. *Moynihan,* 330 Mass. 437, 442-443 (1953); Restatement (Second) of Conflict of Laws § 100, but contrast § 103 (1971), and Restatement (Second) of Judgments § 81, comment a (1982). See also *Tucker* v. *Columbian Natl. Life Ins. Co.,* 232 Mass. 224, 229-231 (1919).

2. In *World-Wide Volkswagen Corp.* v. *Woodson,* 444 U.S. 286, 291-292 (1980), the relevant decisions of the Supreme Court of the United States are reviewed. The opinion states the general rule as follows (citations omitted): " [A] state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State. . . . The concept of minimum contacts . . . per-

---

[1] In pertinent part the Michigan long-arm statutes (§ 600.705, individuals, and § 600.715, corporations; see § 600.711) authorize long-arm jurisdiction in that State based (§ 600.715) upon the existence of any relationship between a nonresident corporation and the State "arising out of the act or acts which create any of the following relationships: (1) The transaction of *any business* within the state . . . . (5) entering into a contract for services to be performed or for *materials to be furnished in the state* by the defendant" (emphasis supplied). These statutes bear a very close similarity to the Massachusetts long-arm statute, found in G. L. c. 223A, § 3(*a*) and (*b*), as amended through St. 1976, c. 435. This statute provides (in part) that a Massachusetts "court may exercise personal jurisdiction over a person, who acts directly or by an agent as to a cause of action in law or equity arising from the person's (*a*) transacting any business in this commonwealth; [or] (*b*) contracting to supply services or things in this commonwealth . . . ." For interpretations of the Michigan statute, see *Kiefer* v. *May,* 46 Mich. App. 566, 570-572 (1973); *Stan Sax Corp.* v. *Siefen Compounds, Inc.,* 68 Mich. App. 768 (1976). See also *McGraw* v. *Matthaei,* 340 F. Supp. 162, 163 (E.D. Mich. 1972). Cf. *Nelligan* v. *Johns-Manville Sales Corp.,* 546 F. Supp. 337, 339-340 (E.D. Mich. 1982). Cf. also *Herman Miller, Inc.* v. *Mr. Rents, Inc.,* 545 F. Supp. 1241, 1245-1246 (W.D. Mich. 1982).

form[s] two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system . . . . [T]he defendant's contacts with the forum State must be such that maintenance of the suit 'does not offend "traditional notions of fair play and substantial justice."' . . . The relationship between the defendant and the forum must be such that it is 'reasonable . . . to require the corporation to defend the particular suit which is brought there.'"[2]

The facts of the present case are near the border line between those recognized as conferring upon a forum State (as matter of due process) jurisdiction over a nonresident corporate defendant and the facts in cases denying such jurisdiction. We regard the contacts of Chrome with Michigan as possibly somewhat more significant than those considered in the *World-Wide Volkswagen* case, 444 U.S. at 297-299. Those contacts with Michigan, however, seem somewhat less than the quasi-in-rem contacts of the then defendants with Delaware, dealt with in the several opinions in *Shaffer* v. *Heitner,* 433 U.S. 186, 200-228 (1977).

*Hanson* v. *Denckla,* 357 U.S. 235, 250-256 (1958), rests on special facts. Jurisdiction of the Florida courts over a Delaware trust company was denied where the trust company's contacts with Florida were merely that Florida was the residence of some beneficiaries of a trust held by that company as trustee and the place where a power of appointment under the trust was exercised.[3]

---

[2]The opinion proceeds, "Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will . . . be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, see *McGee* v. *International Life Ins. Co.,* 355 U.S. 220, 223 (1957); the plaintiff's interest in obtaining convenient and effective relief, see *Kulko* v. *California Superior Court* . . . [436 U.S. 84, 92 (1978)], at least when that interest is not adequately protected by the plaintiff's power to choose the forum, cf. *Shaffer* v. *Heitner,* 433 U.S. 186, 211, n.37 (1977); [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies . . . ."

[3]At 253, it was said (emphasis supplied), "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with

In *McGee* v. *International Life Ins. Co.*, 355 U.S. 220, 221-223 (1957), the nonresident corporate insurer (at 221) had solicited a "reinsurance" contract from a resident of California, who had paid premiums by mail to the insurer at its Texas office. The contacts with California in the *McGee* case, held adequate in the circumstances to confer jurisdiction on the California courts to enforce the contract, are to be compared with those treated as inadequate to confer jurisdiction on the California courts, in *Kulko* v. *Superior Court of California*, 436 U.S. 84, 94-97 (1978). There a separated wife of a husband resident in New York sought in California, where she resided, a modification of a separation agreement made in New York. The *McGee* case was distinguished[4] in the *Kulko* case (436 U.S. at 97-98) as one where the nonresident defendant had "sought a commercial benefit from solicitation of business from a resident of California that could reasonably render [the defendant] liable to suit in state court." In the *Kulko* case, it was mentioned also (see note 4, *supra*) that, unlike the *McGee* situation, "California has not attempted to assert any particularized interest in trying such cases [separation agreement modifications] in its courts by, e.g., enacting a special jurisdictional statute" (436 U.S. at 98).[5] The *McGee* case appears to be the Supreme Court decision most favorable to Splaine's contentions before us.[6]

the quality and nature of the defendant's activity, but it is essential in each case that there be some act *by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State*, thus invoking the benefits and protections of its laws," citing *International Shoe Co.* v. *Washington*, 326 U.S. 310, 319 (1945).

[4] The court in *Hanson* v. *Denckla*, 357 U.S. at 251-252, distinguished the *McGee* case as involving a situation where California "had enacted special legislation (Unauthorized Insurers Process Act) to exercise what [the] *McGee* [case] called its 'manifest interest' in providing effective redress for citizens who had been injured by nonresidents engaged in an activity that the State treats as exceptional and *subjects to special regulation*" (emphasis supplied).

[5] See the discussion of the *Kulko* case in *Morrill* v. *Tong*, 390 Mass. 120, 133-134 (1983), where the contacts with Massachusetts, of a nonresident defendant in a domestic relations matter, brought in a Probate and Family Court in Massachusetts, were held not sufficient to satisfy the Massachusetts long-arm statute, G. L. c. 223A, § 3(a), as amended (see note 1, *supra*).

[6] See, for general discussions of the pertinent authorities, 4 Wright & Miller, Federal Practice and Procedure §§ 1064, 1066-1069, 1073 (1969 & Supp. 1983);

The relevant Massachusetts decisions adhere closely to the principles stated in the decisions of the Supreme Court of the United States. The basis on which Splaine asserts that Chrome is subject to Michigan's long-arm statute seems to be that Chrome has met the requirement (see note 1, *supra*) of "the transaction of any business within" Michigan. In comparable cases under the Massachusetts long-arm statute (see note 1, *supra*) the same question has arisen, under G. L. c. 223A, § 3(*a*), as amended through St. 1976, c. 435, when it has become necessary to determine whether a foreign corporation may be subjected to the jurisdiction of the Massachusetts courts because of that corporation's "transacting any business in this commonwealth."[7] The question before us is essentially whether the record shows that Chrome has transacted business in Michigan.

In *Good Hope Indus., Inc.* v. *Ryder Scott Co.,* 378 Mass. 1 (1979), a Massachusetts corporation engaged a Texas corporation to appraise leasehold interests in oil properties owned in Texas by the Massachusetts corporation and its affiliates. The Texas corporation made nine such reports to the Massachusetts company in the course of a year, during which it initiated fifty-two telephone calls to persons employed by the Massachusetts company and sent seventeen invoices to it. The Supreme Judicial Court recognized (at 7) that the controlling principle was "whether there was some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the . . . [Texas corporation], such

---

2 Moore's Federal Practice par. 4.25 (2d ed. 1983 & Supp. 1983-1984); Annots., 20 A.L.R. 3d 1201 (1968 & Supp. 1983); 23 A.L.R. 3d 551 (1969); 27 A.L.R. 3d 397 (1969).

[7] Section 3(*a*) "asserts jurisdiction over the person [of a nonresident corporation or individual] to the constitutional limit only when *some* basis for jurisdiction enumerated in the statute [§ 3] has been established. Although presented with jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites." *Good Hope Indus., Inc.* v. *Ryder Scott Co.,* 378 Mass. 1, 6 (1979). In the present case, we think the same considerations and facts determine whether Chrome's contacts with Michigan were sufficient (a) to satisfy due process requirements, and (b) to constitute the transaction of business in Michigan. To the extent that there is any contention that Chrome contracted (see § 600.715 of the Michigan statute) "for materials to be furnished in" Michigan, the situation is the same.

that it is fair and reasonable to require . . . [it] to come into the State to defend the action.'' The court distinguished (at 8) earlier decisions in which it had held ''the defendants' contacts with Massachusetts . . . insufficient to ground jurisdiction under . . . § 3(*a*)'' and reversed a judgment ordering the action dismissed.

The earlier cases thus distinguished are very close to the present one. *''Automatic'' Sprinkler Corp. of America* v. *Seneca Foods Corp.*, 361 Mass. 441 (1972), dealt with the purchase of a machine from the plaintiff by a nonresident corporation in Dundee, New York. The plaintiff, a Massachusetts company, had an office in New Jersey, and a division in Ohio where the machine was to be made. The court (at 444) pointed out that the New York ''defendant's contacts in Massachusetts simply consisted of the signing of the purchase order and the mailing of it by the defendant's agent from Dundee, New York, to Worcester, Massachusetts, the receipt by the defendant of the plaintiff's invoice mailed from the Worcester division, the receipt by the defendant of a letter from the plaintiff's Worcester division acknowledging and accepting the defendant's purchase order, and the defendant's payment by mail to the plaintiff's Worcester division of a sum in excess of $3,000 in response to invoices and in part payment of the purchase price.'' Jurisdiction of the defendant under G. L. c. 223, § 3(*a*), was denied.

In *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. 149, 151-152 (1978), the plaintiff in Massachusetts ''saw the defendant's advertisement for the sale of two marine engines in a nautical publication . . . distributed in Massachusetts.'' From Massachusetts he called the defendant's place of business in Florida by telephone and ordered the engines. He then sent a check for the purchase price to the defendant and received in Massachusetts a letter confirming the sale and later several other letters. The defendant shipped the engines from Florida to Massachusetts under a bill of lading stating that shipping ''charges are to be collect.'' From a scant record (at 153) and the showing of no prior business done by the defendant or its officers in Massachusetts, the Supreme Judicial Court concluded that the defendant had insufficient contacts with Massachusetts to constitute the transaction of business in Massachusetts within § 3(*a*) or (at 157-160) to constitute

"contracting to supply services or things in this commonwealth" within the meaning of § 3(*b*). The court interpreted (at 157) the *Droukas* arrangement as one "for the shipment of the engines . . . by means of an independent carrier, with the burden of . . . delivering the engines in the Commonwealth on the carrier."

Referring to *Hanson* v. *Denckla,* 357 U.S. at 235, the *Droukas* court stated (at 154) that it viewed the sale of the engines "as an isolated transaction, with slight effect on the commerce of the Commonwealth and as void of any purposeful intent on the" defendant's part to avail itself of the privilege of conducting activities in Massachusetts. The court went on to say (at 154, n.5) that "the effect of a nonresident's activity on . . . commerce . . . is still an important factor to be considered in deciding the sufficiency of contacts with Massachusetts." See also *Nichols Assocs.* v. *Starr,* 4 Mass. App. Ct. 91 (1976), viewed by the court in the *Good Hope Indus., Inc.* case, 378 Mass. at 9, as based only on two contacts "for the purpose of the jurisdictional question," neither of which seems relevant in the present case.[8]

The present case, we think, lies closer to the *Droukas* case than any other decision. Splaine initiated discussion of the somewhat specialized work he wanted Chrome to undertake. There is no indication in this record that Chrome (or its principal corporation) has ever had any other contact with Michigan. The transaction was an isolated one (as in *Nelligan* v. *Johns-Manville Sales Corp.,* 546 F. Supp. 337, 339-340 [E.D. Mich. 1982]) and not large, as shown by Chrome's quotation of $850 for the work. Chrome's modest advertisements in Hemming's Motor News (a journal comparable to that in the *Droukas* case) did not exclude non-Massachusetts purchasers of Chrome's services but (as suggested in

---

[8] Other decisions by the Supreme Judicial Court appear more remote from the issues raised by the present record. See *Carlson Corp.* v. *University of Vermont,* 380 Mass. 102 (1980), holding that Massachusetts courts take jurisdiction of an action by a Massachusetts corporation to recover damages for breach of a multimillion dollar construction contract signed in Massachusetts after many months of negotiation; *Morrill* v. *Tong,* 390 Mass. 120 (1983), denying jurisdiction under § 3(*a*) on grounds already discussed, note 5, *supra.* See also *Burtner* v. *Burnham,* 13 Mass. App. Ct. 158, 161-162 (1982), where jurisdiction in Massachusetts was sustained over a New Hampshire real estate broker under c. 223A, § 3(*c*), in circumstances not relevant to the present case.

one affidavit) it may have been inserted with the expectation that principally Massachusetts or New England purchasers of those services would be attracted. Compare *Herman Miller, Inc.* v. *Mr. Rents, Inc.,* 545 F. Supp. 1241, 1245 (W.D. Mich. 1982). There was no showing of any continuing relationship by Chrome with Michigan. The transaction had slight, if any, effect on commerce in Michigan and suggests no significant intention to use any privilege of conducting activities in Michigan. Certainly Michigan has not been shown to have engaged in legislative regulation of the type of services conducted by Chrome.

The case is obviously close. We do not regard the *Good Hope Indus., Inc.* case, 378 Mass. at 8-9, as overruling the *"Automatic" Sprinkler Corp.* case, 361 Mass. at 441, and the *Droukas* case, 375 Mass. 149 (1978), each of which it purports to distinguish. This indicates continuing vitality in the *Droukas* case, so we must follow it.[9] The present isolated transaction is insufficient to constitute the transaction of business by Chrome in Michigan or otherwise to establish contacts there sufficient to subject Chrome to suit there as a matter of due process and fairness. The Michigan court had no jurisdiction to enter the judgment upon which this action is brought. Massachusetts is not required to give it full faith and credit.

The judgment is reversed and, unless the complaint is promptly amended to assert Splaine's claims on their merits, summary judgment for Chrome is to be entered in the Superior Court.

*So ordered.*

---

[9] We have considered, of course, Federal court decisions, particularly those in the United States Court of Appeals for the First Circuit. Some may take a more expansive view than the Massachusetts cases of what constitutes "due process" in respect of a State court's exercise of jurisdiction over a nonresident corporation. See, e.g., *Vencedor Mfg. Co.* v. *Gougler Indus.,* 557 F.2d 886, 889-894 (1st Cir. 1977); *Nova Biomedical Corp.* v. *Moller,* 629 F.2d 190, 192-194 (1st Cir. 1980); *Hahn* v. *Vermont Law School,* 698 F.2d 48, 50-52 (1st Cir. 1983). We, however, follow the *Droukas* case.