Botsford, J.
The plaintiff Donald E. Haase brings this action to enforce a money judgment issued by the Superior Court of Rhode Island. See G.L.c. 235, §23A. The judgment was granted on April 21, 1997 against the defendant here, James Galvin Electric Company, Inc. (Galvin) in the amount of $23,372.32.[1] Presently before the court is Haase’s motion for summary judgment, which Galvin opposes. For the reasons discussed below, the motion is allowed.
Background
The following facts are gleaned from the record and are undisputed unless otherwise noted. In the fall of 1993 Shuman Construction Co. (Shuman) entered into a contract with the Massachusetts Turnpike Authority for rehabilitation of the Prudential tunnel fan rooms in Boston, Massachusetts (the project). Shuman contracted with Galvin, a Massachusetts-based company, to perform electrical work on the project. Haase is an electrical contractor who lives in Rhode Island and has a place of business in Narragansett, Rhode Island. In September 1993 a representative of Maguire Group, Inc. (Maguire), the engineer for the project, contacted Haase in Rhode Island and informed him that Galvin, a subcontractor on the project, needed to hire an electrical contractor, and asked Haase to submit a bid.[2] Haase did so.
After Haase submitted the bid, James Galvin, president of Galvin, telephoned Haase in Rhode Island to discuss with Haase the specifics of the bid. Thereafter, Galvin accepted the bid, and so informed Haase in Rhode Island. Haase was awarded the subcontract and Galvin and Shuman agreed to pay Haase $51,200 for the work, which consisted of designing, engineering and constructing an electrical panel.
It appears the parties contemplated that the panel would be designed, engineered and constructed at Haase’s place of business in Narragansett, Rhode Island, with installation to be in Massachusetts. Accordingly, Haase ordered materials for the project to be shipped to Rhode Island where he worked on them. In or about September 1994, the electrical panel was installed at the project site in Massachusetts. Throughout the construction process, Galvin remained in Massachusetts and maintained contact with Haase through telephone calls to him in Rhode Island and correspondence addressed to him there. Some time thereafter, in February 1995, Galvin contacted Haase in Rhode Island again and asked him to perform additional services on the project. Specifically, the work involved installation of special time delay devices for the fans at the project site in Boston. Galvin agreed to pay an additional $1,500 for this work. Haase accepted, and again did all the design, engineering and construction work on these devices in Rhode Island.
Galvin sent the following payments to Haase in Rhode Island for bis work: $7,561 on November 30, 1994; $15,000 on March 31, 1995; and $10,000 on June 16, 1995. Of the total $52,700 at issue for the two pieces of work, $20,139 remains unpaid.
On or about November 12, 1996, Haase filed an action in the Rhode Island Superior Court, Washington County, against Galvin, Shuman and Continental Guarantee & Credit (Continental); Continental was the bonding company on the project. The action was entitled D.E. Haase Associates, Inc. v. J.J. Galvin Electrical Contracting Corporation, et al., WC/96-591 (Haase I).[3] Galvin was served by certified mail, return receipt requested, at its Newton, Massachusetts business address pursuant to Rhode Island court rules. (See R.I. Super.Ct.R.Civ.P. 4(f)(2).) Galvin appeared specially through Rhode Island counsel to contest personal jurisdiction, and filed a motion to dismiss on those grounds. Another party to Haase I, Continental, also moved to dismiss, but on the grounds that the plaintiff in Haase I, D.E. Haase Associates, Inc., was no longer an active corporation. A judge of the Rhode Island Superior Court allowed Continental’s motion and dismissed the case without prejudice. He also denied Haase’s motion for reconsideration; Galvin, through counsel participated at the hearing on the reconsideration motion.[4] Haase refiled the case in the same court in February 1997, naming himself personally as plaintiff; the action was entitled Donald E. Haase v. James Galvin Electric Company, et al., WC/97-89 (Haase II). Haase’s counsel again served Galvin by certified mail at its Newton address,[5] and also sent a courtesy copy of the Haase II complaint to Galvin’s Rhode Island lawyers. Galvin did not respond to the Haase II complaint or appear in any fashion in connection with that case. On April 21, 1997, the Rhode Island court entered a default judgment against *2 Galvin in the amount of $23,372.32. This is the judgment which Haase seeks to have recognized and enforced in this action.
Discussion
The court grants summary judgment where there are no genuine issues of material fact in dispute, and where the summary judgment record entitles the moving party to judgment as matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). “[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates . . . that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case . ..’’ Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The underlying cause of action in Haase H, as it was in Haase I, is for breach of contract; Haase claimed that Galvin owes him $20,139 (plus interest, costs and attorneys fees) pursuant to the electrical services subcontract and additional agreement entered into by the parties in connection with the project. Since Galvin did not appear in the Haase II action, the sole issue to be litigated in this court is whether the Rhode Island Superior Court had proper jurisdiction over Galvin in the contract action. Shapiro Equip. Corp. v. Morris & Son Const. Corp., 369 Mass. 968, 969 (1976). For summary judgment purposes, the question is whether Haase has shown there is no reasonable likelihood that Galvin will be able to prove at trial an absence of personaljurisdiction. See id.[6]
The Rhode Island long-arm statute, G.L. 1956 (1997 Reenactment) §9-5-33(a), provides that “every foreign corporation . . . that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island... in every case not contrary to the provisions of the constitution or laws of the United States.” Thus the statute permits the exercise of long-arm jurisdiction to the extent of constitutional limits. Nicholson v. Buehler, 612 A.2d 693, 696 (R.I. 1982). See O’Neil v. Dicillo, 662 F.Sup. 706 (D.R.I.), affd, 883 F.2d 176 (1st Cir. 1988), cert. denied, 493 U.S. 1071 (1990). This court “may give full faith and credit to the [Rhode Island] judgment, however, only if [Galvin] had ‘minimum contacts’ with [Rhode Island] sufficient to permit the [Rhode Island] court to exercise jurisdiction over it, as a matter of due process, under the applicable decisions of the Supreme Court of the United States and the Supreme Judicial Court." Splaine v. Modern Electroplating, Inc., 17 Mass.App.Ct. 612, 614 (1984). See Tatro v. Manor Care, Inc., 416 Mass. 763, 772-73 (1994) (reviewing United States Supreme Court decisions defining the constitutional requirements for a court’s exercise of personaljurisdiction over nonresident defendant).
On the undisputed facts presented by the summary judgment record, I conclude there were the requisite “minimum contacts”[7] on Galvin’s part with Rhode Island to allow for Haase to proceed with his suit in that State. It is true that Haase initially submitted his subbid to Galvin in Massachusetts, and Galvin, after telephoning Haase in Rhode Island to discuss the details, accepted it in Massachusetts. But it is also the case that the parties appeared to have contemplated — or at least Galvin must have been aware — that the bulk of the work which Haase was contracting to perform would be done in Rhode Island. To that end, Haase ordered materials shipped to Rhode Island and designed, engineered and constructed the electrical panel in question at his place of business in Narragansett; all that remained was installation in the Commonwealth. Compare Nichols Associates, Inc. v. Starr, 4 Mass.App.Ct. 91, 96 (1976) (Massachusetts surveying firm brought suit against Connecticut developer over contract for surveying work; while at least half the work was ultimately done by the plaintiff in Massachusetts, there was no indication the parties had contemplated any work being done in the Commonwealth; in the circumstances, no personal jurisdiction existed over Connecticut defendant).
Moreover, the contacts initiated by Galvin in Massachusetts to Haase in Rhode Island extended over quite a substantial period of time: from September 1993 until June 1995. Those contacts consisted of telephone calls from Galvin to Haase in Rhode Island, correspondence directed to Haase in that State, and a series of payments sent to Haase in Rhode Island in 1994 and 1995 for work being done. See Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 9-10 (1979) (jurisdiction in Massachusetts existed over Texas company which performed services in Texas for more than a year for plaintiff companies it knew to be headquartered in Massachusetts, and maintained close contact with Massachusetts plaintiffs by initiating numerous phone calls, mailing appraisal reports and bills). See also Scott Brass, Inc. v. Wire & Metal Specialties Corp., 344 F.Sup. 711, 715 (D.R.I. 1972) (noting communication by telephone, telegram and letter). Of significant importance too is the fact that after Haase had completed work on the initial contract, Galvin solicited Haase in Rhode Island to perform additional work that was related to but separate from that contract — the design and construction of time delay devices for the Prudential project. And as with the initial work on the electrical panel, Haase was intending to, and did, perform the design, engineering and construction work at his place of business in Rhode Island, as Galvin surely would have known. These facts lead to the conclusion that Galvin’s “contacts with the forum were deliberate and not fortuitous, such that ‘the possible need to invoke the benefits and protections of the forum’s laws was reasonably foreseeable, if not foreseen, rather than a surprise.’ ” Good Hope Indus., Inc., supra, 378 Mass. at 11 (citation omitted).[8] Compare Splaine v. Modern Electroplating, Inc., supra, 17 Mass.App.Ct. at 613, 615, 619-20.[9]
Galvin supports its contention that the Rhode Island court could not permissibly assert personal ju *3 risdiction over it by pointing to the following: Galvin did not solicit the bid from Haase, and did not deputize Maguire to do so; Haase was one of several parties submitting subbids for the project; the project was located in Massachusetts; the bid process was governed wholly by Massachusetts law; Galvin never entered Rhode Island to seek bids on the project, to meet with Haase, to perform services on the project or for any other purpose related to the project; Galvin has no office in Rhode Island, is not licensed there, and does not advertise there; and Galvin never intended or understood that simply by allowing Haase to work on the Massachusetts project he would be subjecting himself to a lawsuit in Rhode Island.
These contentions do not carry the day. Physical presence in the forum state is not required; mail and telephone contact can and often do take its place. Good Hope Indus., Inc., supra, 378 Mass. at 11. “Similarly nondispositive is the fact that the plaintiff[] made the initial solicitation!] with respect to these transactions.” Id.[10] That the project itself was located in Massachusetts and Massachusetts law governed the bidding process is also not controlling. The work contracted for was actually performed in good part in Rhode Island although finally being installed as part of the project work in Massachusetts. And there is nothing to indicate in this record that the Massachusetts bidding laws govern or even apply to the contract dispute between the parties here. [11]
In sum, the record presented on the summary judgment motion indicates that the Rhode Island Superior Court constitutionally could exercise personal jurisdiction over Galvin, and therefore that Haase is entitled under the Full Faith and Credit Clause and G.L.c. 235, §23A to enforce the judgment he obtained in that court in Massachusetts.
Galvin claims that even if the Rhode Island court initially had the right to exercise personal jurisdiction over it in Haase II, Haase is not entitled to summary judgment because he has not established that Galvin had notice of the request for entry of judgment “or the hearing to assess damages.” (Def. mem. at p. 8.)[12] The argument fails.
The record reveals that when Galvin failed to answer or otherwise respond to the complaint, it was defaulted on or about March 26, 1997. See R.I. Super.Ct.R.Civ.P. 55(a). The Rhode Island Superior Court Rules of Civil Procedure, like the Massachusetts Rules of Civil Procedure, permit a default judgment to enter after the entry of default in one of two ways. First, the judgment may be entered by the clerk “[wjhen the plaintiffs claim against a defendant is for a sum certain or for a sum which can by computation be made certain," upon the plaintiffs request and upon affidavit of the amount due. See R.I. Super.Ct.R.Civ.P. 55(b)(1). This rule does not require that service of the plaintiffs request be made on the defendant. Second, in all other cases, the party entitled to entry of a default judgment may apply to the court for such entry. Again, the rule does not provide for notice to the defaulted party unless that party has previously appeared in the action; in such an instance, the party must be given at least ten days’ notice of the application for entry of judgment. Id., Rule 55(b)(2).
In this case, Haase filed a motion for default judgment in the Rhode Island Superior Court, and while it does not appear he gave any notice to Galvin of that motion, there seems to have been no obligation that he do so, given Galvin’s failure to appear in the action. R.I. Super.Ct.R.Civ.P. 55(b)(2). The judgment sought was exactly that set out in the complaint in Haase II, viz., $20,139 plus interest, costs and attorneys fees pursuant to R.I. G.L. §9-l-45.[13] (See Haase II complaint, Count I.) Haase filed no separate motion for assessment of damages nor does it appear that he was required to, since the judgment requested was for a sum certain plus interest, costs and statutorily authorized attorneys fees.[14] Haase is entitled to summary judgment.[15]
ORDER
For the foregoing reasons, the plaintiff s motion for summary judgment is allowed. A final judgment is to enter ordering that the final judgment issued by the Washington County Superior Court of the State of Rhode Island be recognized and enforced in the amount of $23,372.32 plus interest and costs.

 The judgment was entered in the action entitled Donald E. Haase v. James Galvin Electric Co., Inc. et al., WC/97-0089 (Rhode Island Superior Court, Washington County). The amount of the judgment reflects a total of $20,139 plus attorneys fees in the amount of $3,233.30.

 The facts stated in this sentence are taken from the affidavit of Donald E. Haase dated December 3, 1997, which was submitted pursuant to my request for additional information. Galvin filed a supplemental affidavit, dated December 8,1997, in response to that same request. In that supplemental affidavit, Galvin states his “understanding that Haase had learned of the project and the bid opportunity by checking with the Turnpike Authority, and to his knowledge Maguire never solicited a sub-bid from Haase. (Galvin Supp. Aff. ¶¶6, 7.) These statements on the part of Galvin are not based on personal knowledge, and are therefore disregarded. See Madsen v. Erwin, 395 Mass. 715, 719, 721 (1985). Haase’s affidavit appears to be based on personal knowledge and is accepted as true for purposes of ruling on this motion.

 As the caption indicates, Haase I was actually brought not by Haase but by D.E. Haase Associates, Inc., identified in the complaint as a Rhode Island corporation. It appears that before Haase I was filed, the corporate charter of D.E. Haase Associates, Inc. had been revoked in June 1993. There is no dispute here, however, that notwithstanding the status of the corporation, Haase personally performed the work on the project for which he seeks additional payment.

 Haase asserts that on the February 14, 1997 hearing on his motion for reconsideration, the judge stated in effect that he believed there were sufficient contacts to justify personal jurisdiction over Galvin in Rhode Island. (See Plaintiffs Memorandum in Support of Motion for Summary Judgment, Attachment K (transcript of motion hearing April 21, 1997.)) I do not consider the judge’s purported statement as evidence of personal jurisdiction. However, there appears to be no *4 dispute that Haase I was dismissed because of the corporate existence question and not on a determination that personal jurisdiction over Galvin (or any other defendant in that case) was lacking.

 As had been true of the complaint in Haase I, the receipt which was returned following delivery of the certified mail was signed, and it appears to have been signed by. the same person.

 In the circumstances, where Haase has alleged and submitted evidence intended to show that service of process on Galvin was proper and personal jurisdiction existed in Rhode Island, ultimately the burden at trial would be on Galvin to prove improper exercise of jurisdiction in that State. Shapiro Equip. Corp. v. Morris & Son Const. Corp., 369 Mass. 968, 969 (1976).

 International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). As the Supreme Judicial Court has noted, the existence of “minimum contacts” remains the “constitutional touchstone” for determining whether personal jurisdiction will lie. Tatro v. Manor Care, Inc., 416 Mass. 763, 772 (1994), citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985), and Asahi Metal Indus. Co. v. Superior Court, 480 U. S. 102, 108-09 (1987).

 The United States Constitution also requires — in addition to “minimum contacts” which have some basis in an act or acts by which the defendant “purposefully avails itself of the privilege of conducting activities within the forum State”— that the plaintiffs claim arise out of, or relate to, the defendant’s contacts with the forum State. See Tatro v. Manor Care, Inc., supra, 416 Mass. at 772 (quotations omitted), and cases cited. Here, Haase’s contract claim for payment certainly relates (in part) to work he was performing at his place of business in Rhode Island, even though the claim also relates to the Massachusetts — based project, and even though the ultimate destination for the finished work was Massachusetts. Finally, the Constitution demands that assertion of jurisdiction over a defendant not offend “traditional notions of fair play and substantial justice.” International Shoe Co. v. Washington, supra, 326 U.S. at 316, Asahi Metal Indus. Co. v. Superior Court, supra, 480 U.S. at 113. “In practical terms, this means that an assertion of jurisdiction must be tested for its reasonableness, taking into account such factors as the burden on the defendant in litigating in the plaintiffs chosen forum, the forum State's interest in adjudicating the dispute, and the plaintiffs interest in obtaining relief.” Tatro v. Manor Care, Inc., supra, 416 Mass. at 773. It does not seem unreasonable in this case to require Galvin to litigate this matter in Rhode Island. Rhode Island is a State closer to Galvin’s place of business than the western counties of Massachusetts, it has an interest in protecting the contractual expectations of its residents where a substantial amount of the contracted-for work was performed in Rhode Island, and Haase has a strong interest in obtaining the contracted-for payments relating to the work performed.

In that case, the plaintiff, a Michigan resident, obtained a default judgment in Michigan against the defendant Massachusetts-based company and brought suit in the Commonwealth to enforce the judgment. The facts indicated that the plaintiff had seen advertisements by the defendant in specially magazines concerned with refurbishing automobiles, and had contacted the defendant in Massachusetts about the cost of replacing chrome parts for a certain car. Ultimately the plaintiff shipped the parts to the defendant in Massachusetts for inspection and then agreed to have the defendant do the refurbishing work in the Commonwealth. The defendant did the work, sent the parts back to the plaintiff in Michigan, from where they were reshipped to Massachusetts by the plaintiff as unsatisfactory after inspection, and then later shipped once more to the plaintiff in Michigan in the same condition. The Appeals Court considered the facts to be “near the border line between those recognized as conferring upon a forum State (as a matter of due process) jurisdiction over a nonresident corporate defendant and the facts in cases denying such jurisdiction.” Splaine v. Modern Electroplating, Inc., 17 Mass.App.Ct. 612, 615 (1984). In the end, however, the court concluded that the Michigan court did not have a constitutionally adequate basis for personal jurisdiction over the Massachusetts defendant, pointing to the facts that this was essentially an isolated transaction between the parties, for a relatively small sum (the quoted price was $850), initiated by the Michigan plaintiff for specialized work to be performed in Massachusetts, and the defendant company did not have any other contacts with Michigan. Id. at 619-20.
If Splaine is on the border line, the facts of this case place it in the territory of cases where personal jurisdiction over a nonresident corporate defendant can constitutionally be exercised. Involved here is not one but two undertakings by Haase for Galvin, the second solicited by Galvin, where much of the work in question was being done in the forum State of Rhode Island, and a substantial amount of money, over $50,000, was at issue.

 In the same vein, there seems little or no relevance to the fact that other parties in addition to Haase submitted subbids. In the end, Galvin chose Haase, and their business dealings began.

 Galvin cites to a number of cases which it claims support its argument that Rhode Island had no personal jurisdiction over it. (Defendant’s Memorandum in Support of its Opposition to Plaintiffs Motion for Summary Judgment [Def. Mem.], at p. 6.) These cases are distinguishable. They involve factual situations where virtually all the contemplated and actual work done under a contract was performed in the nonresident defendant’s State rather than the forum State, see Telco Communications, Inc. v. New Jersey State Fireman's Mut. Benev. Ass'n, 41 Mass.App.Ct. 225 (1996); Raleigh Rug Co. v. R.A. Civitello, 23 Mass.App.Ct. 1025 (1987); or where the connection to Massachusetts as the forum State was an isolated event insufficient to constitute “transacting business” in the Commonwealth. See Droukas v. Divers Training Academy, 375 Mass. 149 (1978); “Automatic” Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441 (1972); Rye v. Atlas Hotels, Inc., 30 Mass.App.Ct. 904, 905 (1991).

 The supplemental affidavit filed by James Galvin suggests that Galvin may also be arguing that it was not properly served with a copy of the complaint in Haase II. (See Galvin supplemental affidavit, dated December 8, 1997, ¶11.) This is not an argument which Galvin has made in its memorandum opposing summaryjudgment. In the circumstances, and in view of the documentation in the record that (1) Galvin was served by certified mail, return receipt requested, (2) the receipt was returned signed, and (3) Haase’s counsel also faxed a copy of the Haase II complaint to Galvin’s Rhode Island counsel, I do not consider the paragraph in the supplemental affidavit to raise a viable argument of lack of service of process. Clearly service was properly made in this case.

General Laws 1956 (1997 Reenactment) §9-1-45 provides in pertinent part as follows:
The court may award a reasonable attorneys fee to the prevailing party in any civil action arising from a breach of contract in which the court:
(2) Renders a default judgment against the losing party.

 This point appears relevant because under the Rhode Island Superior Court Rules of Civil Procedure, motions for assessment of damages must be served even on parties in default for failure to appear. See R.I. Super.Ct.R.Civ.P. 5(a). Compare Berrios v. Perchik, 20 Mass.App.Ct. 930, 931-32 (1985), cited and relied on by Galvin. In that case, the Appeals Court reversed in part a grant of summaryjudgment to the plaintiff seeking to enforce a Connecticut default judgment on an underlying tort claim. The court did so on the grounds *5 that the plaintiff had not demonstrated he had provided the defendant with notice of the damages hearing in the Connecticut court, which is specifically required to be given after a default judgment enters in tort actions under Connecticut law. In this case, however, Haase brought a contract rather than a tort action with an unliquidated damages claim, and the amount Haase asserted due was certain: the difference between the contracted-for amounts ($52,700) and the amount paid by Galvin and Shuman ($32,561). Attorneys fees as well as interest and costs, also claimed by Haase, do not qualify as damages. Accordingly, there was no occasion for Haase to move for assessment of damages.

Galvin finally argues that no attorneys fees should have been awarded because in its view Massachusetts law should have applied to Haase’s breach of contract claim. Whatever the legal merits of the argument, it is too late to raise it now, the default judgment having entered. As stated at the outset, since Galvin did not appear in Haase II and a default judgment entered, the sole issue Galvin may now litigate is the one relating to personal jurisdiction. Shapiro Equip. Corp. v. Morris & Son Const. Corp., supra, 369 Mass. at 969.